CITY OF BOSTON, Petitioner,

v.

SECRETARY OF LABOR, Respondent.

No. 79–1458.

United States Court of Appeals,
First Circuit.

Argued May 7, 1980.
Decided Sept. 23, 1980.

Steven M. Kaye, Asst. Corp. Counsel, Boston, Mass., with whom Joseph W. Glannon, Sp. Asst. Corp. Counsel, Boston, Mass., was on brief, for petitioner.

Jonathan H. Waxman, Counsel for Litigation, Washington, D. C., with whom Carin Ann Clauss, Sol. of Labor, Nathaniel Baccus, III, Associate Sol., Washington, D. C., for Employment and Training, and Neilda C. Lee, were on brief, for respondent.

Before COFFIN, Chief Judge, BOWNES, Circuit Judge, and DAVIS, Judge, United States Court of Claims.*

DAVIS, Judge.

We are called upon to review actions of the Secretary of the United States Depart-

* Sitting by designation.

ment of Labor in administering the Comprehensive Employment and Training Act of 1973 (CETA program).[1] The CETA program was designed to provide job training and employment opportunities for the economically disadvantaged by means of the cooperative efforts of federal, state, and local governments. Petitioner City of Boston (Boston or the City) is a prime sponsor under CETA.[2] It asks us to set aside a decision of the Secretary of Labor finding a violation of CETA regulations in the City's termination of Ms. Blanche Field (the complainant) from her CETA–funded position, and ordering it to pay $6,065 in back pay from non–CETA funds. We affirm the Secretary's conclusion that the CETA regulations were violated, but we vacate his award of back pay and remand for further consideration of the question whether back pay is the appropriate remedy under the facts of this case.[3]

## I.

Ms. Field filed an application for employment by Boston in a CETA–funded position in January 1975. After four interviews, she was told to report for work at the Workmen's Compensation Division of the City Law Department on February 19, 1975. The complainant was never told that a physical examination was necessary prior to her actual employment.[4] She reported, as instructed, and worked that full day in a CETA Title II (public service) position. On the following day, in accordance with the order of her supervisor, Mr. Earl Franklin, the complainant reported to Dr. Robert Blackburn, an employee of the City, for a physical examination. Dr. Blackburn examined her and administered a number of tests. His notes on Ms. Field's medical record show that he discovered "a large diffuse mass in [the] anterior neck." He also stated that Ms. Field had had this condition for "several weeks" and admitted to having "some trouble breathing." Dr. Blackburn rejected the complainant for employment by the City because of her poor physical condition. According to the testimony of Ms. Field, Dr. Blackburn advised her to see another doctor for treatment of the condition, and refused to further discuss his reason for rejecting her for employment.

After returning to her workplace and conferring with Mr. Franklin, the complainant went to Massachusetts General Hospital where she was examined by Dr. Robert Steiner. Dr. Steiner noted his conclusions in a letter that he gave to Ms. Field. He confirmed the presence of the mass, but diagnosed it as "a simple goiter–a benign medical condition." He stated that he saw no reason why she could not work during treatment.

On February 21, Ms. Field showed Dr. Steiner's letter to her supervisor who promised to speak to Dr. Blackburn concerning her situation. Mr. Franklin testified that he raised the matter with Dr. Blackburn who replied that the letter made no difference, and that his findings would control.

---

**1.** Pub.L.No. 93–203, 87 Stat. 839 (codified at 29 U.S.C. § 801 et seq. (1976)). Since its inception the CETA program has been subject to numerous amendments, most notably Pub.L.No. 95–524, 92 Stat. 1909 (codified at 29 U.S.C. § 801 *et seq.* (Supp. II 1978)).

**2.** A prime sponsor is a state or unit of local government receiving financial assistance under the Act. *See* 29 U.S.C. § 812 (1976) (current version at 29 U.S.C. § 811 (Supp. II 1978)), and 29 C.F.R. 94.4(gg) (1974) (current version at 29 C.F.R. 94.4(oo) (1979)).

**3.** Review of the Secretary's decision is had directly in the United States Court of Appeals. The present standard of judicial review is set out at 29 U.S.C. § 817(b) (Supp. II 1978):

The findings of fact by the Secretary, if supported by substantial evidence, shall be conclusive, but the court, for good cause shown, may, in whole or in part, set aside the findings of the Secretary or remand the case to the Secretary in whole or in part to take further evidence, and the Secretary may thereupon make new or modified findings of fact and may modify the previous action, and shall certify to the court the record of the further proceedings.

**4.** Ms. Field testified that at one interview she was told that a physical exam was not necessary.

The following Monday, Mr. Franklin told the complainant that the decision was final, and that she could not report to work. Subsequently, Ms. Field was paid for two days work from CETA funds.

In March 1975 Ms. Field filed a complaint with the Mayor's Office of Civil Rights (MOCR) which in turn referred it to the Massachusetts Commission Against Discrimination (MCAD) for investigation. In August 1975 she contacted the local representative of the Department of Labor. She was advised that her complaint filed with the City "must be resolved prior to filing a complaint with us." In November 1975 MCAD ruled that there was no probable cause to support further action on Ms. Field's discrimination complaint. It was dismissed without further hearing.

On December 1, 1975, Ms. Field filed a complaint with the City's CETA office alleging discrimination in her removal. The City held a hearing on the complaint on March 3, 1976. The grievance was denied by a written decision dated March 16, 1976. On March 30, the complainant appealed the City's decision to the Acting Regional Administrator for Employment and Training of the U.S. Department of Labor. He found that Ms. Field had been denied her right to written notice regarding the reasons for her termination and an opportunity to respond. On that basis, he ordered that she be reinstated and compensated for her lost wages from non–CETA funds.

Boston sought review within the U.S. Department of Labor under the CETA regulations. A hearing was held before an administrative law judge and both petitioner and respondent presented witnesses. The administrative law judge concurred in the judgment of the Acting Regional Administrator, but reduced the period for measuring back pay to that before March 3, 1976 when the City held a hearing on Ms. Field's complaint. Boston then appealed to the Secretary of Labor. He found that the complainant was a participant in the CETA program, that CETA regulations had been violated in that Ms. Field was denied her right to notice of the grounds of the adverse action prior to the taking of the action, denied her right to an opportunity to respond, and denied her right to an informal hearing. The Secretary also found that back pay was appropriate as a make–whole remedy, but he declined to order reinstatement. It is the Secretary's decision, insofar as adverse to Boston, that we have to consider (*see* note 3, *supra* ).

Three legal issues are presented, and we discuss them *seriatim* : I. Was the complainant a participant in the CETA program; II. Did the City violate CETA regulations in terminating her; and III. Did the Secretary properly exercise his discretion in ordering back pay as a make–whole remedy.

## II.

The regulation at the center of this controversy is 29 C.F.R. § 95.37 (1974).[5] It stated:

Each prime sponsor shall establish a procedure for resolving any issue arising between it and a participant under any Title of the Act. Such procedures shall include an opportunity for an informal hearing, and a prompt determination of any issue which has not been resolved. When the prime sponsor proposes to take an adverse action against a participant, such procedures shall also include a notice setting forth the grounds for any adverse action proposed to be taken by the prime sponsor and giving the participant an opportunity to respond. No individual subject to the issue resolution requirements of this section may initiate the hearing procedures of Part 98 until all remedies under this section have been exhausted. Final determination made as a result of the review process shall be provided to the participant in writing. Such notice shall include the procedures by which the participant may appeal the final determination as set forth in Subpart C of Part 98.

5. This section has been revised. *See* 40 F.R. 22673, 22715 (1975), 41 F.R. 26333, 26380 (1976) (current version at 29 C.F.R. § 98.26 (1979)).

The threshold issue is whether this regulation applied to Ms. Field. That depends on whether she was a participant in the CETA program—a "participant" was then defined as "an individual who qualifies and receives services or takes part in activities under provisions of the Act." 29 C.F.R. § 94.4(dd) (1974) (current version at 29 C.F.R. 94.4(kk) (1979)). Boston contends that the complainant fails to fulfill this definition because she was never a bona fide employee of the City. At the time Ms. Field applied for employment, city executive orders mandated that the appointing department have a copy of an approved medical report before processing personnel forms for appointees to city government positions. Petitioner argues that under these executive orders the complainant could not be a bona fide employee of the City prior to passing her physical. It suggests that during the period Ms. Field worked she was merely a conditional employee subject to unilateral termination for failure to pass her physical, and thus should not be classified as a CETA participant.

■ Assuming, *arguendo*, that petitioner's interpretation of the executive orders is correct,[6] we are persuaded that a "conditional employee" of Ms. Field's type is a participant in the CETA program. The regulation did not require Ms. Field to be a full employee in the eyes of the prime sponsor, however it might define that concept, but that she qualify and receive services under the Act. The complainant worked two days in a CETA Title II position. She was paid for those two days from CETA funds. If Ms. Field qualified (as she did) to receive pay from CETA funds, she likewise qualified as a "participant" who could invoke procedural rights under the CETA regulations. "Participant" is a broad word, covering everyone who has actually entered into the CETA program.

Boston argues that the extension of procedural protections to the complainant means that every person who seeks to participate in the CETA program would be entitled to such protection and that this would impose an impossible administrative burden on prime sponsors. Ms. Field, however, was not a mere applicant. She was hired, given an expectation of work, actually worked for two days and was paid from CETA funds. It is neither inequitable nor administratively burdensome to give such persons the procedural protections mandated by the CETA regulations.[7]

### III.

■ Boston also says that the procedures it used in terminating Ms. Field satisfied the requirements of the federal regulation. This regulation calls for (1) a notice setting forth the grounds for any adverse action proposed to be taken by the prime sponsor, (2) an opportunity to respond, and (3) an informal hearing and a prompt written determination of any issue which has not been resolved. The record supports the Secretary's conclusion that Ms. Field was denied all three by the petitioner.[8]

---

6. It is not clear that the City has ever treated the executive orders to accord with the narrow interpretation urged in this litigation. Mr. Franklin testifies that it was common practice to allow appointees to start work prior to passing a physical exam. The City admits that under local law such appointees must be paid for work performed. Such consistent administrative practice, if knowingly acquiesced in by city officials charged with the implementation of the executive orders, might fairly be construed as a binding administrative interpretation of the breadth of the orders.

7. The City also doubts whether the regulation we have quoted—a regulation located in a part dealing with Title I of CETA—applies at all to terminations under Title II of CETA. However,

the terms of the regulation expressly require each prime sponsor to establish a procedure for resolving any issue arising between it and a participant "under any title of the Act." The regulation then goes on, in general terms, to spell out procedures applicable to Title II as well as to Title I.

8. The question is solely one of the demands of the regulation, and there is no need to discuss the requirements imposed by the Constitution which are irrelevant to our inquiry. Indeed, some courts have held that a CETA participant complaining of lack of procedural protections does not state a claim under the Due Process clause of the Constitution. *See Gooley v. Conway*, 590 F.2d 744 (8th Cir. 1979); *Maloney v. Sheehan*, 453 F.Supp. 1131 (D.Conn.1978).

It is clear from the regulation's use of the word "informal" that a courtroom–type hearing in the traditional sense was not intended. The regulation does call for a hearing, however, and this requires, at the minimum, an opportunity to confront the decision–maker with evidence and arguments in support of the participant's position. Ms. Field had no such opportunity prior to March 3, 1976. Boston contends that her visit with Dr. Blackburn and her conferences with Mr. Franklin constituted an informal hearing. We cannot agree. Mr. Franklin was never in a position to affect Dr. Blackburn's decision. There is nothing in the record to indicate that the doctor even had any obligation to listen to Mr. Franklin's opinion. The latter testified that at the time he felt his intervention would not make any difference. As for Dr. Blackburn, who at all times was the decision–maker, the record indicates that he told Ms. Field nothing more than that he was rejecting her because of the mass in her neck, and that she should go to another doctor for treatment. The complainant's testimony that he refused to discuss the matter further with her is uncontradicted. Furthermore, there is no evidence that Dr. Blackburn seriously considered Dr. Steiner's opinion that Ms. Field could work during treatment. Mr. Franklin, who the record indicates worked closely with Dr. Blackburn, testified that he could not recall any time that Dr. Blackburn had changed his mind because of another physician's report.

These facts also support the Secretary's finding that Ms. Field was denied notice of the grounds for the proposed adverse action and an opportunity to respond. Dr. Blackburn never explained why he believed the presence of the mass disqualified the complainant from employment with the City, nor did he specify the treatment that would satisfy his medical judgment and perhaps qualify Ms. Field for employment. Without being informed of the basis of Dr. Blackburn's judgment the complainant had no effective means to respond or to challenge the grounds for the adverse action.

We do not mean to imply that either Mr. Franklin or Dr. Blackburn acted with anything other than good faith. Procedural protections exist, however, so that a decision–maker's good faith judgment may be objectively tested. The ad hoc procedures employed ·here did not give Ms. Field a meaningful way to challenge her termination, and such procedures do not meet the requirements of the regulation.[9]

Petitioner also contends that the investigation by the Mayor's Office of Civil Rights (MOCR) met the requirements of the regulation. One short answer is that the Office of Civil Rights and the Massachusetts Commission Against Discrimination (MCAD) were both primarily concerned with discrimination–a factor that is irrelevant to our case.[10] In any event, there was no hearing–in the sense of some form of give–and–take–before the MOCR or MCAD. The federal regulation calls for some kind of a hearing, not merely a unilateral investigation followed by a dismissal of the complaint. We cannot view the coupling in the regulation of the word informal with the word hearing as completely stripping the latter of its common legal meaning of an opportunity to present one's case and to respond to the opponent's position.

## IV.

◼ While we agree with the Secretary that the regulation applied to Ms. Field and was violated by Boston, we cannot affirm

---

Nor does the regulation state the protections it affords in terms of due process. It enumerates three procedural protections which we have to assess in and of themselves.

9. Throughout its brief Boston emphasizes that Dr. Blackburn's judgment was upheld on the merits after a hearing. But the mere fact that a party loses on the merits cannot justify a denial of procedural rights.

10. The City alleges that CETA officials had approved the MOCR procedure for review of complaints. The record supports the Secretary's finding, however, that any approval was limited to discrimination complaints, and as a grievance mechanism, not a substitute for the hearing requirement of the regulation.

his order of back pay on the record before us. Petitioner does not argue that the Secretary lacks the authority to order back pay, but it contends that the policies supporting back pay are not served by the Secretary's award in this case. The Secretary refers to back pay as a "make whole remedy," but does not discuss how this compensatory principle applies to the facts of this particular case.

A procedural violation has taken place, but the parties agree that it was remedied in March 1976. Ms. Field lost on the merits of her substantive complaint, and the Secretary refused to reinstate her on that basis. Thus, if proper procedures had been used, the complainant could have been terminated in February 1975. The Secretary found, and we affirm, not that in the end the complainant was unlawfully denied her position, but that she was unlawfully deprived for a little over one year of her right to challenge her termination. This is the loss for which Ms. Field is entitled to be made whole.

We are troubled, for one thing, by the Secretary's apparent failure to consider whether and to what extent the delay in the vindication of the complainant's procedural rights is properly chargeable to the petitioner. Ms. Field's termination occurred early in 1975, not too long after CETA was enacted in December 1973. Regulations did not issue until June 1974, and were amended in 1975 and again in 1976. Though we have found (see note 7, supra) that the procedural regulation applied here governed Title II (public service) terminations, the placement of the regulation was curious and perhaps misleading. Moreover, there is no allegation or finding that the City acted in bad faith in failing to follow the regulation. It reasonably though mistakenly believed that it had no duty to do so because Ms. Field was not an employee for City purposes. The record also shows that much of the delay was due to confusion over the proper forum to be invoked and the proper procedures to be followed. This confusion was shared by the complainant, the City, and the Department of Labor. Ms. Field filed a *discrimination* complaint with the Mayor's Office of Civil Rights (MOCR). The Secretary found that the MOCR procedure was approved by the Labor Department for use in discrimination cases. Ms. Field was nevertheless advised by Labor Department officials in August 1975 that she could not file a complaint with the CETA office until she had resolved her complaint filed with MOCR. When Ms. Field finally filed her complaint with the local CETA office in December 1975, she received a hearing and a decision in a little over three months.

The Secretary should consider these factors, as well as the others in the case, before imposing or delineating the extent of any back-pay award. It may well be that, in the circumstances, no back pay is merited, or that back pay should be more strictly limited than in the Secretary's decision now under review. The parties are entitled to a reasoned evaluation of the problem in the light of the specific facts, rather than an automatic and broadscale invocation of a discretionary remedy that should turn on the particular circumstances. *See Albemarle Paper Co. v. Moody,* 422 U.S. 405, 424–25, 95 S.Ct. 2362, 2374–75, 45 L.Ed.2d 280 (1975). Before assessing back pay, the Secretary should be satisfied, and give his reasons why, such an award is necessary and appropriate to vindicate the precise right of which Ms. Field was deprived.

*Affirmed in part; vacated and remanded in part.*