**MILWAUKEE COUNTY, Petitioner,**

v.

**Roswitha PETERS and U. S. Department of Labor, Respondents.**

No. 81–1801.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 19, 1982.

Decided June 1, 1982.*

---

* This appeal was originally decided by unreported order on June 1, 1982. See Circuit Rule 35.

The Court has subsequently decided to issue the decision as an opinion.

James T. McClutchy, Corp. Counsel, Milwaukee County, Milwaukee, Wis., for petitioner.

Dennis M. Grzezinski, Milwaukee, Wis., Ellen L. Beard, Washington, D. C., for respondents.

Before CUMMINGS, Chief Judge, PELL, Circuit Judge, and DAVIES,** Senior District Judge.

** The Honorable Ronald N. Davies, Senior District Judge for the District of North Dakota, is sitting by designation.

1. The ALJ's decision became the final decision of the Secretary of Labor when 30 days passed without his modifying or vacating it (County Br. 2).

CUMMINGS, Chief Judge.

In this case Milwaukee County seeks review of the final decision of a Labor Department Administrative Law Judge (ALJ) under the Comprehensive Employment and Training Act (CETA).[1] We have jurisdiction by virtue of 29 U.S.C. § 817 (Supp. II 1978).[2] We affirm both parts of the ALJ's decision: (1) that six months' back pay was necessary to redress the CETA violation; and (2) that Milwaukee County, as the CETA prime sponsor, is jointly and severally liable with the CETA employer for payment of the award from non-CETA funds.

### Background

Roswitha Peters worked from December 1, 1977, to February 3, 1978, as a receptionist-cum-office manager for the Welfare Advocacy Center, Inc. (WAC) of Milwaukee, Wisconsin. Her salary was paid with CETA funds that were channeled from Milwaukee County, the prime sponsor under the CETA program, to the Rehabilitation Council of Greater Milwaukee, a sub-grantee of the County, and then to the Rehabilitation Council's sub-grantee WAC. Ms. Peters was discharged without notice by the Director of WAC on February 3, 1978. The specific acts that precipitated the discharge are set out in the Peters Brief, at 3, n. 2; in general they involved alleged insubordination, lack of cooperation, and hostility to fellow workers and clients.

Ms. Peters appealed her discharge to the WAC Board of Directors Personnel Committee, which upheld the decision on April 13, 1978. Ms. Peters then took her case to the Milwaukee County CETA office. On July 7, 1978, the hearing officer awarded Ms. Peters 30 days' back pay and 32.5 hours of compensatory time off for overtime she had worked; he also ordered her reinstated

2. That Section provides that review of the Secretary's final action lies in the Court of Appeals for the circuit in which the aggrieved prime sponsor is located. In the citations that follow, the statute is referred to in its original form (without date) or as amended in 1978 (Supp. II 1978). Regulations are those in effect at the time of the events at issue.

with WAC and given 30 days to improve her performance.

By that time, however, Ms. Peters' job at WAC no longer existed, and she was encouraged to look for another CETA position elsewhere. She found such a job with the Rehabilitation Council on August 3, 1978. She held that job until December 31, 1978, when all CETA positions there were discontinued.

In the meantime, Ms. Peters appealed the County CETA office's determination to the Department of Labor, seeking back pay for the entire period from February 3 to August 3, 1978, and other relief. WAC and the County also appealed, challenging the award of any back pay. The ALJ found that Ms. Peters' firing had been improper under the CETA program, that she had not been fired for cause, and that six months' back pay was therefore required to make her whole.[3] The ALJ also made WAC and the County jointly and severally liable for the award, a decision which probably has the practical effect of making the County alone pay.[4]

### The Back Pay Award

■ The County first argues on appeal that no back pay whatsoever should have been awarded. It points out that there is no entitlement to a CETA job and that a private employer who hires CETA workers can fire them for any reason or no reason— so long as he does not fire for a proscribed reason (e.g., race, sex, or religion). See 29 U.S.C. § 823(a)(1) (Supp. II 1978). That argument misapprehends Ms. Peters' claim. Under the terms of the Act and regulations,

CETA workers are entitled to the same working conditions and benefits as the non-CETA employees of a given employer. 29 U.S.C. § 848(a)(4); 29 C.F.R. § 98.24(b). A WAC personnel rule gave probationary employees a procedural right not to be fired before they had had written notice of their deficiencies and a 30-day grace period in which to correct them.[5] Ms. Peters' peremptory discharge violated WAC's own policies and therefore also violated the statutory ban on discriminatory treatment of CETA employees. The County's response is that the WAC rule must be construed to cover only certain employee failures—like deficient typing or filing skills, which can be improved—and does not require WAC to tolerate "gross misconduct" for an additional 30 days. There are two difficulties with this argument. First, no misconduct—gross or otherwise—was found. Second, in its own hearing, the County had awarded 30 days' back pay predicated on the same understanding of the WAC rule that Ms. Peters and the ALJ have. The County's revisionist interpretation comes too late.

■ The County's first fall-back position is that the award of more than one month's back pay is too generous. The County thinks that the firing was justified, subject only to the 30-day grace period, and it describes the contrary conclusion of the ALJ as "a mere difference of opinion." The customary standard of administrative review, especially where credibility issues are involved, compels us to give the ALJ's findings more deference than that.[6] Ms. Peters explained her supervisor's complaints to the ALJ's satisfaction. She showed that her

3. The ALJ also awarded her compensation for 65 hours of overtime, rather than 32.5 hours, payable out of CETA funds. That aspect of his decision is not challenged here.

4. At oral argument counsel for Milwaukee County stated that WAC is not financially responsible.

5. Ms. Peters was, all parties concede, a probationary employee under the WAC rule at the time she was fired. At oral argument, there was considerable discussion of the WAC rule, which accords to probationary employees a measure of protection that non-probationary, at-will employees do not have. The explanation probably lies in the sort of work WAC does: it represents welfare recipients who have complaints against the County Welfare Department. It may be that WAC is willing to take extra pains with probationary employees in order to be able to hire people whose understanding of its clients' needs outstrips their expertise at office work.

6. The statute provides that "[t]he findings of fact * * *, if supported by substantial evidence, shall be conclusive." 29 U.S.C. § 819. *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456, is still the leading case on review of credibility determinations.

remarks, taken in context, were not insubordinate or offensive. She also showed that relations with her supervisor had been cordial until just before the firing, and that the change was attributable to external factors. The supervisor was suffering from terminal cancer and had become understandably irascible and unpredictable at the time of the firing. Although the supervisor had died by the time of the hearing, the ALJ did not rely solely on her absence. He also took into account the likely truth of Ms. Peters' explanations and the lack of any other complaints about her work. His decision is sufficiently supported by the record.[7]

Second, the County adverts to Ms. Peters' failure to mitigate her damages by finding other work more promptly.[8] The record, however, shows that she did look for other jobs, never turned down any chances, and promptly accepted the one job that was available as soon as it was offered.

■ We conclude that Ms. Peters was denied the procedural protections WAC accorded to other probationary employees. Had she been given those protections, she probably would not have been fired, since she lost her job more because of her supervisor's illness than because of any defects in her own performance.[9] Finally, her diligence in searching for other employment is enough to permit the award of back pay for the entire six-month period (February 3, 1978 to August 3, 1978) during which she did not have CETA or other employment.

### The County's Joint and Several Liability with WAC

■ The County charges that holding it responsible for the back pay award is either not authorized under the CETA statute and regulations or not sufficiently brought home to CETA prime sponsors. As the respondent Labor Department points out, however, the overall scheme of the CETA program is that the Department of Labor will deal primarily with its grantees, and grantees will have responsibility for further ramifications of the program. Specifically, the grantee has responsibility for the "development, approval and operation of all contracts and subgrants" and "shall require that its contractors and subgrantees adhere to the requirements of the Act." 29 C.F.R. § 98.27(d). Furthermore, under the 1978 amendments, the Secretary can—with proper notice and a hearing—terminate or suspend the funding or order other remedial measures (including reimbursement out of non-CETA funds) when the recipient of CETA funds either does not comply with the Act or does not force its sub-contractors, sub-grantees, and other recipients to do likewise. 29 U.S.C. § 816(d) (Supp. II 1978). The ALJ also has broad remedial discretion:

> [R]elief * * * may contain such terms, corrective action, conditions, sanctions (including awards of back pay), reallocations, and other provisions as are consistent with and will effectuate the purposes of the Act and the regulations issued thereunder, including provisions designed to insure that no federal financial assistance will thereafter be extended under such program unless and until the prime sponsor, recipient or subrecipient corrects its noncompliance and makes satisfactory assurance that it will fully comply with the Act and regulations. 20 C.F.R. § 676.91(c)

Holding the prime sponsor liable for back pay awards is consonant with the legislative scheme.

This result cannot have been wholly unanticipated. At oral argument, the County

---

**7.** These issues are fully discussed in the ALJ's opinion at 7–8 (County App. 107–108).

**8.** Respondents contend that the mitigation issue is being raised for the first time on appeal. The County urges that it is an integral part of the back pay determination. We find that it was raised, though cursorily, in the administrative proceedings.

**9.** Ms. Peters' case is thus distinguishable from *City of Boston v. Secretary of Labor*, 631 F.2d 156 (1st Cir. 1980). There the First Circuit disapproved of a back pay award to a CETA employee who did not receive the appropriate procedural safeguards, but who had a disabling heart condition. Since she was terminable for cause, the procedural defect had not caused damages as large as the Secretary had found. Ms. Peters had, according to the ALJ, not done anything to warrant her dismissal.

conceded its responsibility for any misspending of CETA funds by its sub-grantees and for any sub-grantee hiring of ineligible people as CETA workers. It sought to distinguish discharges of sub-grantee employees as matters over which a grantee has less control. It is not clear to us why firings in contravention of CETA requirements (the only firings that would expose either the sub-grantee or the County to liability) are different from illegal hirings or illegal expenditures. Nor is it clear that practical control—in the sense of actual participation in or influence over a decision—is the touchstone. The more appropriate consideration is that grantees have considerable autonomy in the local administration of CETA programs; the federal government is entitled to exact a corresponding accountability.[10]

For the foregoing reasons, the decision appealed from is affirmed in its entirety. Costs to respondents.

10. Another factor supports making the County pay if WAC cannot. Neither entity ever made an attempt to pay the initial 30-day back pay award, although the County itself had found Ms. Peters was entitled to it. Indeed the County subsequently argued that the WAC rule did not mean what it said and that Ms. Peters was entitled to no back pay. In the face of demonstrated recalcitrance, the ALJ was justified in taking positive steps to insure that Ms. Peters did not end up with an uncollectible judgment. See the ALJ's decision at 19 and n. 7 (County App. 119).