**CITY OF PHILADELPHIA, Petitioner,**

v.

**U.S. DEPARTMENT OF LABOR, Respondent.**

No. 83–3005.

United States Court of Appeals, Third Circuit.

Argued Nov. 16, 1983.

Decided Dec. 12, 1983.

Marilyn Z. Kutler, City Sol., Reba C. Smallwood (argued), Deputy City Sol., City

---

of Philadelphia Law Dept., Philadelphia, Pa., for petitioner.

Francis X. Lilly, Deputy Sol. of Labor, William H. DuRoss, III, Assoc. Sol., for Employment and Training.

Harry L. Sheinfeld, Counsel for Litigation, Lafayette S. Rose (argued), U.S. Dept. of Labor, Washington, D.C., for respondent.

Before ADAMS and BECKER, Circuit Judges, and NEWCOMER, District Judge [*].

## OPINION OF THE COURT

ADAMS, Circuit Judge.

This proceeding requires us to determine whether the Secretary of Labor properly awarded backpay to two workers who allegedly were wrongfully furloughed by the City of Philadelphia while employed under the Comprehensive Employment and Training Act (CETA).[1] Because it appears that the Administrative Law Judge (ALJ) misunderstood the legal standard for awarding backpay to CETA employees, we remand.

### I.

As part of the termination of some 300 CETA positions, Gerald Savino and Philip Robinson were furloughed by the City of Philadelphia in March 1980. These employees filed a complaint, alleging *inter alia* that their termination violated the regulation requiring that CETA employees receive the same treatment as comparable non-CETA civil servants. 29 C.F.R. § 98.24 (1980). In particular, the employees claimed that the City disregarded the Pennsylvania Veterans' Preference Act, 51 Pa. Cons.Stat. § 7107, by failing to include their years of military service in calculating their seniority.

An Administrative Hearing Examiner determined that the employees should have received seniority credit for their military service and that they would not have been laid off from March through September 1980 if their seniority had been correctly calculated. The Hearing Examiner ordered the City to reinstate both employees, but did not mention backpay for the period of the improper furlough. A Grant Officer affirmed the Hearing Examiner, holding that the denial of backpay was within the Examiner's discretion so long as the employees were not discriminatorily terminated.

On appeal to an ALJ, however, the denial of backpay was reversed. The ALJ's disposition, ordering reinstatement and backpay, became the final decision of the Secretary of Labor, 20 C.F.R. § 676.91(f) (1982), and the City now petitions this Court for review. 29 U.S.C. § 817(a) (Supp. V 1981). Before us, the City contends that the ALJ erred in awarding backpay.[2]

---

[*] Hon. Clarence C. Newcomer, United States District Court for the Eastern District of Pennsylvania, sitting by designation.

[1.] The CETA legislation, originally enacted in 1973, Pub.L. No. 93–203, 87 Stat. 838, was substantially revised by the CETA Amendments of 1978, Pub.L. No. 95–524, 92 Stat. 1909. Unless otherwise indicated in this opinion, "CETA" refers to the Act as amended in 1978, as well as the regulations promulgated thereunder.

We note that even though the CETA program was phased out as of September 30, 1983, Pub.L. No. 97–300, §§ 181(a), (e), (f)(4), 96 Stat. 1354–55 (1982), decisions reviewing backpay awards under CETA will remain useful precedent. According to counsel for the Department of Labor, numerous claims for backpay under CETA are still being litigated in various courts throughout the country. Moreover, CETA's successor statute, the Job Train-

ing Partnership Act of 1982, Pub.L. No. 97–300, § 164, 96 Stat. 1348, incorporates the essential language from the 1978 CETA amendments that expressly authorizes individual remedies for aggrieved CETA workers. *Compare* 29 U.S.C.A. § 1574(g) (West Supp.1983) *with* 29 U.S.C. § 816(f) (Supp. V 1981).

[2.] In its brief, the City also argued that the reinstatement order was erroneous because Pennsylvania law as interpreted in *Braden v. O'Neill*, 368 Pa. 369, 83 A.2d 382 (1951), did not require that the employees' military service be credited in calculating the furlough order. At oral argument, however, the City implicitly conceded that any objections to the reinstatement order had been waived during the course of administrative review. *See* 20 C.F.R. § 676.88(f) (1981); *U.S. v. L.A. Tucker Truck Lines*, 344 U.S. 33, 37, 73 S.Ct. 67, 69, 97 L.Ed. 54 (1952). In any event, the reinstatement issue is now moot: the two employees were reinstated

## II.

Without question, the Secretary of Labor has the authority to award backpay in appropriate circumstances. In its 1978 amendments to the CETA legislation, Congress expressly authorized the Secretary "to order such corrective measures, as necessary, with respect to ... [an] aggrieved person" who has been "unlawfully denied ... a benefit to which that person is entitled under the provisions of this Act or the Secretary's regulations." CETA Amendments of 1978, Pub.L. No. 95–524, § 106, 92 Stat. 1926, *codified at* 29 U.S.C. § 816(f). Pursuant to this new legislative authority, the Secretary promulgated 20 C.F.R. § 676.91(c) (1979), specifying backpay as one permissible remedy for unlawfully discharged CETA workers:

> Orders for relief may provide for ... such ... sanctions (including awards of back pay) ... as are consistent with and will effectuate the purpose of the Act and regulations issued thereunder....

Even under pre-1978 law, which was silent regarding backpay, Courts of Appeals have upheld the Secretary's authority to order this form of relief. *Comm. of Kentucky Dept. of Human Resources v. Donovan,* 704 F.2d 288 (6th Cir.1983); *City of Boston v. Secretary of Labor,* 631 F.2d 156 (1st Cir. 1980) (the Secretary's authority is assumed); *but see City of Great Falls v. U.S. Dept. of Labor,* 673 F.2d 1065 (9th Cir.1982).

The issue, then, is whether the standard applied by the ALJ in determining the propriety of backpay in the present case is consistent with the grant of authority to order this remedy. As we read his opinions, the ALJ believed that an improperly furloughed CETA employee should ordinarily be granted backpay:

> In view of the interest fostered by back pay relief and the purpose which it serves, an award may be appropriate in cases of this type absent circumstances which render it inequitable. The record before me fails to reveal circumstances justifying the denial of back pay. Accordingly, it will be awarded.

*Matter of Savino,* 81–CETA–300 (June 3, 1982) at 3, and *Matter of Robinson,* 81–CETA–283 (June 9, 1982) at 3; App. at 4. In denying the City's motion to reconsider, the ALJ reiterated that:

> [c]laimant here was dismissed in violation of the Act and, absent a showing that such relief would be inequitable, he is entitled to a back pay award.

*Savino, supra,* Order Denying Reconsideration (Oct. 29, 1982) at 1, and *Robinson, supra,* Order Denying Reconsideration (Oct. 29, 1982) at 1; App. at 4. Instead of requiring that the employees make an individualized showing that backpay was appropriate in their cases, the ALJ apparently presumed that backpay should be ordered whenever an employer violates CETA. Thus the ALJ placed the burden on the City to demonstrate that this form of relief would be inequitable.

■ The CETA legislation and regulations prohibit a presumption in favor of backpay. The Act requires the Secretary to choose "necessary" corrective measures. 29 U.S.C. § 816(f) (Supp. V 1981). Likewise, the regulation permits the ordering of backpay when it "will effectuate the purpose" of CETA. 20 C.F.R. § 676.91(c) (1982). Read together, the Act and the regulation foreclose an automatic award of backpay. Whatever specific criteria the Secretary may choose to develop for backpay decisions, CETA does not support a flat presumption favoring backpay. The Secretary must be shown some reason justifying backpay in the particular circumstances of a case.

---

to CETA positions shortly after the Hearing Examiner's decisions early in 1981, and on April 1, 1981, both accepted permanent jobs with the City. As we understood the position of the City that was set forth at the oral argument, it now contests only the backpay award, urging that the ALJ disregarded the fact that the employees were treated in precisely the same fashion as comparable non-CETA workers and that the ALJ failed to provide a "careful" justification for the backpay award. We do not reach these contentions, since it is clear that the ALJ misinterpreted the law governing the appropriateness of backpay.

Although the Courts of Appeal have not announced general standards of appropriateness for backpay under the 1978 CETA amendments, they have consistently assumed the necessity of some individualized justification for such relief. *See, e.g., City of Boston v. Secretary of Labor,* 631 F.2d 156, 161 (1st Cir.1980); *Comm. of Mass. v. U.S. Dept. of Labor,* 683 F.2d 568, 570 (1st Cir.1982); *Comm. of Kentucky, supra,* 704 F.2d at 296; *Milwaukee Co. v. Peters,* 682 F.2d 609, 612 (7th Cir.1982); *City of Pine Bluff, Ark. v. U.S. Dept. of Labor,* 658 F.2d 577, 582 n. 5 (8th Cir.1981); *County of Monroe, Fla. v. U.S. Dept. of Labor,* 690 F.2d 1359, 1362–63 (11th Cir.1982). When the Secretary has disregarded this requirement by awarding backpay to a worker who has suffered only nominal injury, *County of Monroe, supra,* or by awarding backpay without any particularized showing that it is appropriate, *City of Boston, supra,* such backpay awards have not been upheld.[3]

Backpay is therefore a permissible, but not a presumptive remedy under CETA. This form of relief must be individually justified by a showing that it is necessary to redress injury caused by a violation of CETA and that it will effectuate the purpose of CETA. *See* 29 U.S.C. § 816(f); 20 C.F.R. § 676.91(c). In view of the ALJ's misapprehension that backpay is presumptively appropriate, we must vacate that portion of the decision that awards backpay. On remand, the Secretary should weigh not only the affirmative justification tendered by the employees in this case, but also any mitigating circumstances offered by the City, including its contention that CETA employees were treated no differently than

non-CETA employees, just as 29 C.F.R. § 98.24(b) requires. Although this argument cannot be raised with respect to the reinstatement issue, *see* note 1 *supra,* it has not been waived with respect to the backpay issue.

### III.

The ALJ's misunderstanding of the applicable law requires that we grant the petition for review and remand the case to the Secretary of Labor to determine whether Savino and Robinson can demonstrate that an award of backpay would, in their cases, redress injury caused by a violation of CETA and effectuate the purpose of CETA.

---

**3.** The ALJ did not mention these or any Court of Appeals decisions. In concluding that backpay is presumptively appropriate, he relied entirely on a previous decision by the Secretary of Labor that states:

Where a participant has been deprived of employment in violation of a specific provision of the Act or regulations, the purposes of the Act are served by ordering a remedy which, to the extent possible, puts him in the position he would have been in but for the violation. Payment of wages lost, or back pay, is one element of such a remedy.

*Savino, supra* at 2, and *Robinson, supra* at 2 (quoting *Matter of Allen Gioielli,* 79–CETA–148 (January 18, 1982)); App. at 1. The *Gioielli* decision, however, dealt with the Secretary's authority to order backpay under pre-1978 law, not the appropriate placement of the burden for justifying backpay in a particular case. Because the Secretary's authority to order backpay cannot be questioned in a case governed by the 1978 CETA amendments, *see* pages 4–5 *supra, Gioielli* was inapposite.