Tommie BROOME, William E. Boyer, Catherine LaFrance (Whalen), Barbara Powell, Wayne Malloy, Bruce Benton, Thomas Watson, Jerome Thomas, Dilma Garcia and Irene Meyers, Petitioners,

v.

UNITED STATES DEPARTMENT OF LABOR, Respondent,

City of Camden Employment and Training Administration, Intervenor.

Petition of Tommie BROOME, Catherine LaFrance (Whalen), Barbara Powell, Wayne Malloy, Bruce Benton, Thomas Watson, Jerome Thomas, Dilma Garcia and Irene Meyers.

No. 88–3080.

United States Court of Appeals, Third Circuit.

Argued Sept. 7, 1988.

Decided March 10, 1989.

Rehearing and Rehearing In Banc Denied April 5, 1989.

Saul J. Steinberg (argued), Steinberg and Ginsberg, Voorhees, N.J., for petitioners.

Neilda C. Lee (argued), Office of the Sol., Washington, D.C., for respondent.

Martin F. McKernan, Jr. (argued), McKernan and McKernan, Camden, N.J., for intervenor.

Before BECKER, HUTCHINSON and SCIRICA, Circuit Judges.

## OPINION OF THE COURT

SCIRICA, Circuit Judge.

This is an appeal under 29 U.S.C. § 817 (Supp. V 1981) from a partial denial of backpay by the Secretary of Labor. The Secretary found that plaintiffs' employment was improperly terminated and awarded backpay. Plaintiffs claim that they are entitled to additional backpay over that awarded by the Secretary. Because we find that the Secretary's decision is supported by substantial evidence, we will affirm.

## I.

Plaintiffs, ten former employees of the City of Camden, contest their termination from positions funded under the Comprehensive Employment and Training Act ("CETA"), 29 U.S.C. §§ 801–999 (1976 & Supp. V 1981).[1] On March 23, 1979, the Administrator of Camden's Employment

---

**1.** CETA was enacted in 1973, Pub.L. No. 93–203, 87 Stat. 838, and was amended in 1978, Pub.L. No. 95–524, 92 Stat. 1909. In 1983, CETA was replaced by the Job Training Partnership Act of 1982, Pub.L. No. 97–300, 96 Stat. 1348.

and Training Administration ("ETA") notified ETA staff members in the Operations Unit [2] by memorandum that their employment would be terminated May 4, 1979, their unit eliminated and their services contracted out to private industry. The ETA Administrator stated that she had observed "an intolerably high level of inefficiency, operational errors, poor performance, and nonprofessional capabilities" in the plaintiffs' department. Although citing "just cause" as the reason for termination, the ETA Administrator did not review the individual personnel files of any of the affected employees, which contained prior evaluations of adequate performance. The memorandum also notified the employees that the State Employment Agency would assist them in finding other employment. When several staff members contacted George Cox of the State Employment Agency, he informed them that no positions were available.

The City of Camden ETA Personnel Handbook sets forth procedures governing termination of employment for just cause or for reduction in work force. Specifically, the handbook provides that "[n]o City of Camden ETA employee may be removed from service except for just cause and upon written charges," and describes infractions that may constitute "just cause," including neglect of duty, incompetency, inefficiency, or incapacity due to mental or physical disability. The handbook also provides that, "[i]f a reduction in force becomes necessary due to lack of funds or work, ... ETA will exhaust all possibilities of transfer, new assignment, and/or promotion" in order to minimize employee displacement.

Any reorganization of ETA departments requires prior approval by the Regional Office for the Department of Labor under CETA Federal Regulations, 20 C.F.R. § 676.16(b)(2)(1979). Nevertheless, the ETA Administrator reorganized the Operations Unit and terminated the plaintiffs on May 4, 1979 without the Department of Labor's approval. The Department of La-

bor's Regional Administrator finally approved the reorganization on June 29, 1979.

Following termination, several plaintiffs filed untimely grievances at the ETA that were denied. Plaintiffs then appealed their terminations to a grant officer at the Department of Labor. The grant officer found that (1) the reorganization was in violation of the 20 C.F.R. § 676.16(b)(2), since it was implemented without prior approval of the regional office; (2) the employees were not entitled to pre-termination hearings under the Code of Federal Regulations or Camden's grievance procedures; (3) the terminations were the result of a "reduction in force," and were therefore not in violation of merit principles or policies contained in the handbook; and (4) the ETA made inadequate efforts to transfer, reassign, or promote the staff members affected by the reduction in force. As a result, the grant officer awarded plaintiffs backpay from the date of their termination until June 29, 1979, the date that the reorganization was approved by the Department of Labor, and ordered the city to reinstate the staff members to positions similar to those previously held.

Dissatisfied with the grant officer's award of limited backpay, plaintiffs requested a hearing before an Administrative Law Judge. After a hearing, the ALJ determined that Camden ETA's failure to obtain Department of Labor approval for its reorganization of the Operations Unit violated 20 C.F.R. § 676.16(b)(2), even though subsequently approved on June 29, 1979. In addition, the ALJ concluded that the "reorganization [of the Operations Unit] was carried out with little, if any concern, for the employees affected." According to the ALJ, the ETA Administrator made no effort to transfer, reassign, or promote any of the affected employees prior to their termination, and her direction to the employees to contact Mr. Cox was characterized by the ALJ as merely a "token effort." Indeed, Philip Benson, the assistant personnel officer for the City of Camden ETA, testified at the hearing that he was never asked to transfer, reassign or promote any

---

**2.** The Operations Unit consisted of plaintiffs and   six other ETA staff members.

of the affected employees. At one point Benson testified generally that all the affected employees could have filled positions that were available at Camden ETA after their termination, but later limited his testimony and stated that only some of the employees could have filled positions available at the ETA. Following their termination, three employees attempted to secure new positions at Camden ETA, but received no offers. In particular, plaintiff William Boyer applied for a position for which he was qualified, but was given no preference.

The ALJ determined, based on this evidence, that the employees' termination, ostensibly for "just cause," violated the plaintiffs' substantive and procedural rights. Although citing inefficiency and poor performance of the Operations Unit as cause for termination, the ETA Administrator failed to bring specific charges against any employee, nor did she consult the employees' individual personnel files. The ALJ also found that the ETA Administrator made no effort to reassign, transfer, or promote the employees displaced by the reorganization as required by the reduction in force provisions in the personnel handbook.[3] The ALJ concluded that an award of backpay would be the appropriate "make whole" remedy, and found that the employees had made a "particularized showing" of entitlement to backpay under the standard set forth in *City of Philadelphia v. United States Dept. of Labor*, 723 F.2d 330, 332–33 (3d Cir.1983) (backpay award not justified without particularized showing that backpay remedy is appropriate). Therefore, the ALJ awarded the employees back-

pay from the date of their termination, May 4, 1979, to January 14, 1983, one of the days of the hearing, and ordered reinstatement to positions similar to those formerly held.

On January 2, 1985, the Secretary of Labor asserted jurisdiction to review the ALJ's determinations under 20 C.F.R. § 676.91(f) (1984). On December 14, 1987, the Secretary issued a decision, finding that plaintiffs were entitled to backpay from May 4, 1979 to June 29, 1979: "Clearly, but for Camden ETA's termination action, the complainants would have been employed until June 29, 1979, and are therefore entitled to backpay until that date."

The Secretary also found that the ALJ had properly applied the reduction in force provisions of the Staff Personnel Handbook because "there obviously was a reduction in force for the Operations Unit." Nevertheless, the Secretary concluded that the measure of compensation lost after June 29, 1979 was too speculative and, citing *City of Philadelphia*, found no "individualized justification" to warrant an award of additional backpay.

Relying on the testimony of Philip Benson, that plaintiffs could have filled some of the positions available,[4] the Secretary also found insufficient evidence that plaintiffs would have remained employed at the Camden City ETA had the handbook provisions been followed. Moreover, the Secretary concluded that "nothing in the record indicate[s] that any of the complainants would have been selected over those eventually chosen for the various openings dis-

---

**3.** The ALJ found that the ETA Administrator terminated the employees without just cause, and also held that the Administrator made no effort to transfer, reassign or promote the plaintiffs pursuant to the handbook's reduction in force provisions. App. at 15.

**4.** Philip Benson testified as follows:
Q: Having gone through the list of job opportunities, and even eliminating those which were participants serving as staff members, is it your testimony or opinion that every one of the terminated persons could have filled some position or another of the new ones created?
A: I think so, yes.
Q: Did anyone instruct you or direct you to counsel any of the terminated staff or go over

with any of the terminated staff what new positions were available?
A: No
    *     *     *     *     *     *
Q: Is it your testimony that all of the positions in Exhibit 43 could have been filled by at least one of the terminated individuals?
A: It is my testimony that there were people who were terminated who had the educational background and necessary skills, as well as knowledge of the program itself, who could have filled some of the positions and not have been terminated.
App. at 123–25.

cussed in Mr. Benson's testimony if the provision had been utilized consistent with the agency's right to select from among the best candidates." Finally, the Secretary found the ALJ's award of backpay until January 14, 1983 unjustified because of the steady reduction in the size of the ETA administrative staff during the relevant period: the size of the staff fell from sixty-eight employees on June 30, 1980 to approximately fifteen on January 14, 1983. Thus, "in light of the agency's staff shrinkages," the Secretary found nothing in the record to support the continuation of plaintiffs' employment until January 14, 1983.

## II.

Findings of fact made by the Secretary of Labor shall be conclusive if supported by substantial evidence. 29 U.S.C. § 817(b) (Supp. V 1981); *United States v. Spears*, 859 F.2d 284, 292 (3d Cir.1988); *City of Camden v. United States Dept. of Labor*, 831 F.2d 449, 450 (3d Cir.1987). Issues of law, however, are subject to plenary review. *Dill v. I.N.S.*, 773 F.2d 25, 28 (3d Cir.1985). In this case, the Secretary determined that, because plaintiffs had not proven that they would have been employed after June 29, 1979 if the handbook provisions had been followed, the evidence presented at the administrative hearing did not justify an award under the "individualized justification" standard for CETA backpay awards enunciated in *City of Philadelphia v. United States Dept. of Labor*, 723 F.2d 330 (3d Cir.1983). Whether the Secretary properly evaluated plaintiffs' evidence under *City of Philadelphia*'s legal standard is an issue of law receiving plenary review.

## III.

Although the focus of this appeal is on the Secretary's denial of backpay, we must first consider the relevance of the personnel handbook and the city's reasons for terminating plaintiffs.

## A.

Plaintiffs contend that the city failed to comply with guidelines for employee termination set forth in its Employment and Training Administration's staff personnel handbook. Federal regulation, 20 C.F.R. § 676.43(a)(1) (1979), requires CETA agencies to develop a handbook to insure agency compliance with the Intergovernmental Personnel Act Merit Principles. These principles provide as follows:

(a) Requirement. Employees who have acquired permanent status will not be subject to separation except for cause or such reasons as curtailment of work or lack of funds. Procedures will be established to provide for the transfer, demotion, or separation of employees whose performance continues to be inadequate after reasonable efforts have been made to correct it. Retention of employees in classes affected by reduction in force will be based upon systematic consideration of type of appointment and other matters ...

\* \* \* \* \* \*

(3) Quality of performance and length of service should be taken into account in reduction in force systems.

20 C.F.R. § 900.606(a) & (b)(3) (1979). Pursuant to these regulations, Camden ETA adopted a staff handbook providing that no employee could be terminated except for "just cause and upon written charges."[5] The handbook also required Camden ETA to comply with certain procedures in the event of a reduction in force. "Whenever the amount of work no longer justifies an

---

5. "Just cause" includes the following:
 1. Neglect of duty.
 2. Incompetency or inefficiency.
 3. Incapacity due to mental or physical disability.
 4. Insubordination or serious breach of discipline.
 5. Intoxication or under the influence of drugs while on duty.

6. Chronic or excessive absenteeism.
7. Conduct unbecoming an employee in public service.
8. The use or attempt to use one's authority or political influence to control or modify the political action of any person within ETA. App. at 52.

employee, ETA will exhaust all possibilities of transfer, new assignment, and/or promotion." App. at 53. Thus, the Camden ETA handbook went beyond the standards mandated by federal regulation by requiring affirmative action to secure new positions for employees displaced by a reduction in force. Because the city adopted the handbook pursuant to the federal regulation, it is bound to apply its provisions. We may therefore evaluate the city's actions in terms of compliance with its handbook provisions.

### B.

The Administrative Law Judge found that the plaintiffs' termination before June 29, 1979 was made without just cause and awarded backpay for the period between May 4, 1979 and June 29, 1979. The Secretary affirmed the ALJ's backpay award for that period, thus implicitly upholding the ALJ's finding that plaintiffs were terminated prior to July 29, 1979 without just cause.[6] We find no error here.

### C.

■ After June 29, 1979, the city had authority to implement the reorganization of the Operations Unit, and its concomitant reduction in ETA's work force. Plaintiffs contend that the agency did not undergo a reduction in force because although the Operations Unit was eliminated, the agency as a whole increased in size for a brief period after June 29, 1979. Plaintiffs make this argument because if there was no bona fide reduction in force, the ETA Administrator would have been required to comply with the "just cause" provisions of the handbook.

The handbook does not explain what constitutes a reduction in force, and does not specify whether a reduction can be limited to a particular department. The Secretary of Labor adopted the view that a reduction in force need not affect the entire agency to trigger the reduction in force provision of the handbook. We find this to be a

reasonable interpretation of the handbook's language. *Cf. Securities Industry Ass'n v. Board of Governors*, 468 U.S. 137, 142, 104 S.Ct. 2979, 2982, 82 L.Ed.2d 107 (1984) (substantial deference owed to agency's interpretation of its own statute); *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984) (if statute is silent or ambiguous, question for court is whether agency's answer is based on permissible construction of statute).

Since a bona fide reduction in force occurred on June 29, 1979, the handbook required the ETA Administrator to exhaust all possibilities of transfer, reassignment, or promotion for anyone displaced from employment. The Secretary found that even if the reduction in force provisions of the handbook had been implemented, plaintiffs did not present sufficient evidence to warrant backpay beyond June 29, 1979.

### D.

Having found that the city failed to afford plaintiffs the procedural protections provided in the reduction in force section of the handbook, the Secretary affirmed the award of backpay from May 4, 1979 to June 29, 1979. The Secretary's decision to limit plaintiffs' backpay to this period is grounded almost exclusively on our opinion in *City of Philadelphia v. United States Dept. of Labor*, 723 F.2d 330 (3d Cir.1983), requiring "individualized justification" before backpay may be awarded in a CETA case.

In *City of Philadelphia*, the Secretary of Labor awarded backpay to two workers who were improperly laid off from their CETA positions. *Id.* at 331. In determining whether backpay was the appropriate remedy for an improper lay-off, we looked to the CETA legislation and regulations. *Id.* at 332. Under the Act, we noted that the Secretary may choose such corrective measures as are "necessary," *id.* (citing 29 U.S.C. § 816(f) (Supp. V 1981), and that the regulation permits a backpay award when

---

**6.** Because the Secretary found liability for the period between May 4, 1979 and June 29, 1979, the ETA Administrator's termination of plaintiffs' employment without just cause prior to June 29, 1979 has been remedied and has not been appealed.

it effectuates the purpose of the statute, *id.* (citing 20 C.F.R. § 676.91(c) (1982)). We observed, however, that neither the Act nor the regulation created a presumption in favor of backpay. *Id.* Rather, the Secretary must show some reason, based on the particular circumstances of the case, that a backpay award is justified. We noted that other "Courts of Appeals ... have consistently assumed some individualized justification [is necessary] for such relief." *Id.* (citing *City of Boston v. Secretary of Labor,* 631 F.2d 156, 161 (1st Cir.1980) (deprivation of right to challenge complainant's termination constitutes procedural violation; backpay not necessarily justified as means to rectify violation)); *Massachusetts v. United States Dept. of Labor,* 683 F.2d 568, 570 (1st Cir.1982) (only substantive wrong warrants backpay award); *Kentucky Dept. of Resources v. Donovan,* 704 F.2d 288, 296 (6th Cir.1983) (termination that is substantively correct but procedurally or technically improper not appropriate circumstance for backpay award); *Milwaukee Co. v. Peters,* 682 F.2d 609, 612 (7th Cir.1982) (CETA employer denied employee procedural protections; employee may not have been fired had procedures been followed and therefore employee entitled to backpay for six-month period during which she did not have CETA or other employment); *City of Pine Bluff v. United States Dept. of Labor,* 658 F.2d 577, 582 n. 5 (8th Cir.1981) (fact that City offered complainant substantially similar CETA position that she refused to accept is appropriate factor to be considered in determining propriety of backpay award); *County of Monroe v. United States Dept. of Labor,* 690 F.2d 1359, 1362–63 (11th Cir.1982) (because procedural defects themselves did not work to complainant's detriment, presumption of damages not appropriate).

■ Accordingly, backpay may not be awarded to a complainant who has proven procedural deprivations but has not shown individualized justification for backpay by proving a specific loss flowing from those procedural defects. In this case, the Secretary relied on the individualized justification standard of *City of Philadelphia* to deny backpay, finding that plaintiffs' continued employment after June 29, 1979 was "mere speculation" and consequently that they had not met their burden to show substantive loss resulting from the procedural deprivation.

The Secretary's conclusion must be supported by substantial evidence, which constitutes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)). Although the agency's decision must also have a reasonable basis in the law, *Carter v. Railroad Retirement Bd.,* 834 F.2d 62, 64 (3d Cir.1987), the court may not substitute its judgment for that of the Secretary, *SEC v. Chenery Corp.,* 332 U.S. 194, 207, 67 S.Ct. 1575, 1582–83, 91 L.Ed. 1995 (1947). With this in mind, we have reviewed the Secretary's decision and find that it is supported by substantial evidence.

■ In his decision, the Secretary found that there was insufficient evidence to warrant backpay beyond June 29, 1979. Citing the testimony of Philip Benson, the Secretary found some evidence that plaintiffs could have performed jobs available after their termination, but no evidence comparing the plaintiffs' qualifications with those actually chosen to fill the positions. "At most, Mr. Benson's testimony indicates that he felt the complainants could perform these jobs, not that they could have received them on the basis of merit over those actually selected." App. at 83 (footnote omitted).

Moreover, the Secretary cited the testimony of ETA Personnel Officer Dolores Davis demonstrating that the size of the agency was drastically reduced in the three years following the plaintiffs' termination. App. at 84. The Secretary noted that the agency's "staff size fell from sixty-eight (nonparticipant) employees on June 30, 1980, to approximately fifteen individuals on January 14, 1983." App. at 84. Based on this evidence, the Secretary determined that there was no support for the ALJ's award of backpay until January 14, 1983. In contrast to this evidence of "staff shrinkages," plaintiffs produced no evidence that any of the positions remained

available within the agency for any particular time. Because the plaintiffs failed to produce evidence demonstrating the duration of those positions, the Secretary found that they had not proven justification for backpay up to January 1983 with sufficient particularity to meet the standard in *City of Philadelphia.*

We find that the Secretary's conclusion is supported by substantial evidence under the standard set forth in *Richardson v. Perales,* and therefore we will affirm the decision to deny backpay from June 29, 1979 to January 14, 1983. *See Perales,* 402 U.S. at 401, 91 S.Ct. at 1427 (substantial evidence constitutes that which a reasonable mind would accept as adequate to support agency's conclusion). Moreover, we find that the Secretary properly evaluated the evidence under the "individualized justification" standard set forth in *City of Philadelphia. See Carter,* 834 F.2d at 64 (agency's decision must have reasonable basis in law).

### IV.

Accordingly, we will affirm the Secretary of Labor's decision holding that plaintiffs were not entitled to backpay beyond June 29, 1979.

Each side to bear its own costs.