COUNTY OF MONROE, FLORIDA,
Petitioner,

v.

UNITED STATES DEPARTMENT OF
LABOR, Respondent.

No. 81–5788.

United States Court of Appeals,
Eleventh Circuit.

Nov. 8, 1982.

**1360**

Lucien C. Proby, Jr., County Atty., W. Randall Winter, Asst. County Atty., Key West, Fla., for petitioner.

William H. DuRoss, III, Associate Sol., Jonathan H. Waxman, Counsel, E. Kathleen Shahan, U. S. Dept. of Labor, Washington, D. C., for respondent.

Before RONEY, TJOFLAT and FAY, Circuit Judges.

FAY, Circuit Judge:

This is an appeal by the County of Monroe, Florida from the Secretary of Labor's holding that Mr. A. J. McClung, a former Comprehensive Employment Training Act (CETA) employee, was not afforded a prompt hearing on his grievance of wrongful dismissal from the CETA program and that he be granted back pay as a result of this improper procedure. We agree that Mr. McClung was denied procedural due process but reverse the award of back pay.

We are asked to decide two questions. First, whether Mr. McClung was afforded procedural due process in his termination from CETA employment. Second, if Mr. McClung was denied procedural due process, whether the award of back pay is appropriate in this case.

 On September 19, 1977, Mr. McClung was employed by Monroe County, Florida as a driver-foreman for the "Clean up the Keys" project under a Title VI CETA grant. Monroe County was a member of the South Florida CETA Consortium, a group of several counties associated for the purpose of receiving and distributing CETA funds. After approximately one month Mr. McClung was discharged for refusing to perform manual labor. He insisted that his job was strictly to supervise a clean-up crew. Two days later on October 20, 1977, the Monroe County Public Works Director and two other county officials met with Mr. McClung to discuss the responsibilities of his position. At this meeting the county officials showed Mr. McClung a job description outlining his position as "working foreman." The officials also explained in detail the responsibilities of Mr. McClung's job. The next day Mr. McClung was reinstated with full understanding of the job requirements.

On November 10, 1977, Mr. McClung was notified by telephone that he was suspended pending discharge. The following day Mr. McClung received a letter from the Monroe County Manager of the Municipal Service District suspending him for "repeated failure to follow work guidelines given by [his] Coordinator and also for total inability to handle employees in [his] charge." On the recommendation of the project coordinator and Mr. McClung's supervisor, the Board of County Commissioners terminated Mr. McClung at their meeting on November 15, 1977, effective November 11, 1977.

Mr. McClung filed a grievance at the Key Largo CETA office on November 29, 1977. This was forwarded through the Key West CETA office to Monroe County. Monroe County took no action on the grievance.

Monroe County employment regulations and CETA employment regulations are not identical. Under the Monroe County regulations, Mr. McClung was a "probationary" employee because he had been employed for less than six months. Monroe Co. Code § 2–54. As a probationary employee under the Monroe County regulations Mr. McClung was not entitled to a grievance hearing and review. *ibid.* On the other hand, under CETA regulations, Mr. McClung was entitled to a hearing on his grievance. 29 C.F.R. § 98.26 (1977). The County Attorney recommended that no action be taken on the grievance in light of the county regulations. Because Monroe County abided by their own regulations in dealing with Mr. McClung, they argue that

he was not entitled to a hearing at all. Under the grant contract by which Monroe County received federal funds for CETA programs, the county agreed to "comply with the Comprehensive Employment and Training Act of 1973, as amended, and with all applicable federal, state *and local* ordinances and regulations . . . ." (emphasis added). This part of the grant contract would appear internally inconsistent when, as here, the CETA requirements and the local requirements differ. But we find that while the CETA requirements go further than the local ones, they are supplemental and not conflicting. No Monroe County regulation is violated by following the CETA directive of a grievance hearing on termination of an employee. The CETA regulation simply requires more procedural protection for employees. Whether in good faith or not, compliance by Monroe County with their own procedural regulations does not satisfy their obligations under the grant when CETA itself requires more.

Having decided that Monroe County is required to comply with all CETA regulations regardless of the county's own regulations we now return to the facts to trace the course of Mr. McClung's grievance.

After receiving no action on his grievance with Monroe County, Mr. McClung wrote his Congressman, Dante Fascell, to report his complaint. As a result of Congressman Fascell's intervention, an informal hearing was held by the South Florida CETA Consortium on August 28, 1978. The Consortium, Monroe County and Mr. McClung were present. Efforts to resolve the dispute failed at this conference and a full hearing was ordered for October 23, 1978. When Monroe County was not present at the October hearing, it was rescheduled for March 22, 1979. At the March hearing after a full presentation by the County and Mr. McClung, the Consortium hearing examiner denied the grievance. He found that Mr. McClung had failed to perform the work required by his supervisors and the job description and that the County had substantially complied with CETA procedures and regulations.

On April 7, 1979, Mr. McClung appealed the Consortium hearing examiner's decision to the Atlanta Regional Office of the Employment and Training Administration. The Regional Office granted Mr. McClung another hearing before the Associate Regional Administrator, a grant officer, on May 31, 1979 who again ruled that Monroe County was justified in terminating Mr. McClung for refusing to work. But the grant officer ruled that because fourteen months elapsed from the time Mr. McClung first requested a hearing through Congressman Fascell on January 12, 1978, and March 22, 1979 when he was given a hearing, that the South Florida Employment and Training Consortium had failed to meet the CETA regulation Section 98.26 requirement of a prompt determination of any issue at termination of a CETA employee. Because of this procedural shortcoming, the grant officer awarded Mr. McClung back pay plus salary increases that would have accrued from November 11, 1977, to the date of that decision—May 31, 1979.

When Monroe County and the South Florida Employment and Training Consortium appealed the Grant Officer's order to the Office of Administrative Law Judges, the order of back pay was affirmed with one modification. The award of back pay was reduced to include only the one-year period that Mr. McClung could have held the job as a CETA participant. The Administrative Law Judge again recognized that the only violation of Mr. McClung's rights had been procedural, stating "admittedly, the Complainant was not wrongfully deprived of his job." The award of back pay was predicated on the delay in holding a hearing, and improper procedure at termination.

The Secretary of Labor made the Administrative Law Judge's decision his final order. This appeal is from that order.

The Consortium was found to have violated 29 C.F.R. § 98.26 (1977). This CETA regulation reads as follows:

> Section 98.26 Procedures for resolving issues between grantees and complainants

(a) Each prime sponsor or eligible applicant shall establish a procedure for resolving any issue arising between it including any subgrantee or subcontractor of the prime sponsor and a participant under any Title of the Act. Such procedures shall include an opportunity for an informal hearing, and *a prompt determination of any issue* which has not been resolved. When the prime sponsor or eligible applicant takes an adverse action against a participant, such procedures shall also include a *written notice setting forth the grounds for the adverse action* and give the participant an opportunity to respond.

(Emphasis added).

The Secretary of Labor held that the November 11, 1977, letter to Mr. McClung was insufficient notice of grounds for termination and that the delay of fourteen months was not a "prompt determination." We find adequate support in the record for these determinations.

■ We now turn to the more difficult question of whether it is appropriate to award back pay to a CETA employee who was terminated for good cause in a procedurally deficient way. All levels of administrative review have determined that Mr. McClung's termination was substantively correct because he continually refused to work. Yet he has been awarded back pay because certain CETA regulations were not followed. No claim is made that the procedural defects themselves worked to the detriment of Mr. McClung. In fact, Mr. McClung never raised the issue of delay, or complained that the delay affected him in any way.

The Supreme Court discussed the issue of awarding back pay for denial of procedural due process in *Carey v. Piphus,* 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978). There students were suspended from school without being afforded appropriate procedural due process. The Court refused to presume damages from the procedural fault and held that if it is shown that the suspension would have occurred even if a proper hearing had been held then the students

would not be entitled to recover damages caused by the suspension. The Court held that to recover damages they must be due to the procedural defect not just the resulting suspension. 435 U.S. at 260, 98 S.Ct. at 1050. Otherwise, only nominal damages would be proper.

*Carey v. Piphus* is controlling here. When Mr. McClung's hearing finally took place, his termination was found to have been for good cause. The Administrative Law Judge stated that "it is likely that even if the correct procedures had been followed the Complainant would have been terminated." So while Mr. McClung has been deprived of his procedural rights, he has lost nothing because of it. He would have been terminated even if all procedures and regulations had been followed.

■ The Administrative Law Judge's assertion that in losing procedural rights only, Mr. McClung was deprived of "the learning experience those regulations were intended to provide" is unpersuasive. The regulations are to insure and protect substantive rights. When, as here, the Complainant's substantive rights have not been violated, the procedural rights have no independent educational value to the Complainant. Only if some actual loss flows from the loss of procedural due process may he be compensated.

■ We do not suggest that the Secretary of Labor has no authority to award back pay in cases of improper discharges of CETA participants. Section 106(d)(1) of CETA, 29 U.S.C. § 816(d)(1) (Supp. II 1978); 20 C.F.R. § 676.91(c). But as noted by the Department of Labor in its brief, the purpose of the remedy of back pay is to make the aggrieved party whole. It is unclear to us how a complainant who was properly discharged in a procedurally imperfect way is made whole by the payment of a year's wages for which he did not work. There is little logical correlation between the award and the loss. The payment of back pay here would be a windfall, not a make-whole compensation. In fact the Department of Labor's own regulations contain the following guidelines:

If the termination was improper on procedural grounds but substantively proper (there were sufficient grounds under CETA or other applicable local rules to justify the termination), back pay would not normally be appropriate unless the procedural impropriety amounted to a denial of an opportunity to have the claim(s) heard and/or they were substantively prejudiced thereby.

U. S. Department of Labor, Employment and Training Administration, Field Memorandum No. 188–80 (March 14, 1980).

To award back pay in this case would be to allow the procedural tail to wag the substantive dog.

The status of this issue in our circuit is unusual. Since the Eleventh Circuit's creation on October 1, 1981, we have adopted the cases decided before that date by the Fifth Circuit as precedent for our own cases. *Bonner v. City of Prichard*, 661 F.2d 1206 (1981). Three cases were decided by the Fifth Circuit after the Supreme Court handed down *Carey v. Piphus, supra,* on the issue of back pay awards for violation of procedural due process. *Jackson v. Stinchcomb,* 635 F.2d 462 (5th Cir. 1981); *Glenn v. Newman,* 614 F.2d 467 (5th Cir. 1980); *Thompson v. Bass,* 616 F.2d 1259 (5th Cir. 1980). These cases did not apply or mention *Carey* and assumed that violations of procedural due process does merit an award of back pay.

▇ This inconsistency was addressed by the Fifth Circuit's Unit B in *Wilson v. Taylor,* 658 F.2d 1021 (1981). That opinion recognized the firm rule of the Fifth Circuit (and subsequently the Eleventh Circuit) that a three-judge panel may not disregard precedent set by a prior panel absent an intervening Supreme Court decision or *en banc* circuit decision. *Hernandez v. City of Lafayette,* 643 F.2d 1188 (5th Cir. 1981); *Fulford v. Klein,* 529 F.2d 377 (5th Cir. 1976), *majority opinion adopted by en banc court,* 550 F.2d 342 (5th Cir. 1977); *Davis v. Estelle,* 529 F.2d 437 (5th Cir. 1976). Application of that rule would have lead to again, disregarding a controlling Supreme Court decision. The *Taylor* panel chose not to do that on the grounds that *Carey v. Piphus* was binding on the panels in the three Fifth Circuit cases and that they were without power to disregard it. 658 F.2d at 1035. Thus, the general rule forbidding disregard of prior panel decisions was held not to apply, and *Wilson v. Taylor* properly followed the rule of *Carey v. Piphus.* ·

*Wilson v. Taylor* involved a policeman in Winter Park, Florida who was discharged in a procedurally imperfect way. Later, hearings confirmed that the dismissal was justifiable and substantively correct, but back pay was awarded. The Fifth Circuit vacated and remanded holding that "under the authority of *Carey,* Wilson may not recover—as damages for the procedural due process violation—back pay or educational or retirement benefits which would have accrued had Wilson worked from the date of his procedurally improper discharge ... until the date of the procedurally proper hearing." 658 F.2d at 1035.

Although *Wilson v. Taylor* was decided on October 13, 1981, two weeks too late to stand as precedent for the Eleventh Circuit under *Bonner v. City of Prichard,* we have recently decided to accept as binding all cases decided by Unit B of the Fifth Circuit. *Stein v. Reynolds Security,* 667 F.2d 33 (11th Cir. 1982). Unit B of the Fifth Circuit was an administrative unit created prior to the formal division of the circuit and consisted of judges who subsequently made up the Eleventh Circuit. The three judges who made up the *Wilson v. Taylor* panel are all now sitting as judges of the Eleventh Circuit. Therefore, we adopt the holding of *Wilson v. Taylor.*

▇ For a party to recover more than nominal damages for a deprivation of procedural due process, he must show actual compensable injury. The injury caused by justified termination is not compensable in the form of back pay. *Carey v. Piphus, supra; Wilson v. Taylor, supra; Laje v. R. E. Thomason General Hospital,* 665 F.2d 724 (5th Cir. 1982); City of *Boston v. Secretary of Labor,* 631 F.2d 156 (1st Cir. 1980).

The award of back pay is REVERSED.