**NEW YORK URBAN COALITION, INC., Petitioner,**

v.

**UNITED STATES DEPARTMENT OF LABOR, Respondent.**

**Ellen Bate, Intervenor.**

**No. 208, Docket 83–4116.**

United States Court of Appeals, Second Circuit.

Argued Nov. 23, 1983.

Decided March 27, 1984.

---

Charles T. Lee, New York City (William L.D. Barrett, Seth M. Lieberman, Robert S. Insolia, David N. Yellen, Webster & Shef-

field, New York City, on brief), for petitioner.

Jane C. Snell, New York City (Francis X. Lilly, William H. DuRoss, III, Harry L. Sheinfeld, Louise L. Cavanaugh, United States Department of Labor, Washington, D.C., on brief), for respondent.

Arthur Cowan, New York City (Morton B. Dicker, Marshall Green, John Kirklin, Nancy Morawetz, The Legal Aid Society, New York City, on brief), for intervenor.

Before FRIENDLY, MANSFIELD and KEARSE, Circuit Judges.

KEARSE, Circuit Judge:

Petitioner New York Urban Coalition, Inc. (the "Urban Coalition" or "Coalition"), petitions for review of a decision of the Secretary of Labor ("Secretary") ordering it to pay back wages with interest to intervenor Ellen Bate, as compensation for her improper termination from a job subsidized by the federal government pursuant to the Comprehensive Employment and Training Act ("CETA" or "Act"), 29 U.S.C. §§ 801–999 (Supp. V 1981). The Coalition contends that the Secretary erroneously ordered the payment of backpay solely on the ground that the termination of Bate was procedurally improper, without considering whether there were substantive grounds for imposing the discipline. It also contends that the Secretary improperly awarded backpay for a period of time after the date on which all other CETA employees in the project that employed Bate ceased to receive wages because the project was cancelled. We agree that the Secretary was required to consider

the issue of substantive justification for the termination and that if an award of backpay is to be made, it should be for a more limited period. We therefore remand the case to the Secretary for further proceedings.

## I. BACKGROUND

The Urban Coalition is a New York not-for-profit corporation engaged in developing programs to aid disadvantaged persons in New York City (the "City"). In 1979, the Coalition entered into a contract with the City to manage the City's public service employment programs under Title VI of CETA, 29 U.S.C. §§ 961–970. Pursuant to regulations of the Department of Labor (hereinafter sometimes the "Department"), organizations employing CETA participants established CETA Participant Complaint Procedures ("Complaint Procedures") to resolve employment disputes. See 20 C.F.R. Part 676, Subpart F (1983). Section II.B.4. of the City's Complaint Procedures provided that an employer could make an immediate termination in a case in which "because of the serious, dangerous, or volatile nature" of the acts of the employee, the procedures for notice and a hearing could not be implemented. In such a case, a hearing was to be held after termination, and the Hearing Officer could rescind the termination if it was unjustified. Section II.B.2.a. of the City's Complaint Procedures provided, in pertinent part, that unless confronted with a situation requiring immediate termination as set forth in § II.B.4., an employer could not terminate an employee without giving the employee notice and an opportunity to correct the problem.[1]

---

**1.** Section II.B.2.a. of the City's Complaint Procedures provided as follows:
B. DISCIPLINARY ACTIONS
. . . .
2. RESPONSIBILITIES OF EMPLOYER
 a. *Supervision Responsibility*
 (1) Except as set forth in paragraph 4 of this Section IIB [Situations Requiring Immediate Termination], should the participant's work or conduct be unsatisfactory under the employer's rules or personnel practices, supervision shall:
 (a) Discuss the reason for dissatisfaction with the participant, and provide suggestions for corrective action;

 (b) Provide the participant with a written statement of the identified problem and a confirmation of the discussion regarding corrective action. A copy shall be signed by the participant and retained by the employer in the participant's personnel folder.
 (2) If, after appropriate notice under paragraph (1), above, the identified problem persists, supervision shall prepare a recommendation for discipline, and transmit it, together with the documented record to the employer's Complaint Officer.

## A. *The Events*

During the course of its contract with the City, the Coalition entered into a subcontract with the Roosevelt Island Youth Program ("RIYP"), pursuant to which RIYP agreed to employ CETA participants at its youth center. On October 9, 1979, Ellen Bate was hired as a Senior Youth Counselor and CETA Title VI worker at RIYP. At the time she was hired, she received a copy of the City's "Notice of Participant Rights and Availability of Procedures," which was the City's summary of § II. of its Complaint Procedures. The summary stated, *inter alia*, that before a CETA employee could be fired or disciplined, the employer was required (1) to discuss the problem with the employee and suggest ways of correcting it; (2) to give the employee a written statement of the problem; and (3) if the problem continued, to recommend discipline to the CETA Complaint Officer. If the Complaint Officer agreed there was a problem, he was to send the employee a notice of charges and the reasons for bringing them.

On Friday, March 7, 1980, Bate had an argument with her supervisor, RIYP Director Luisa Jordan, involving allegations by Jordan that Bate was incompetent and disloyal. As a result of the argument, Jordan summarily dismissed Bate. On Monday, March 10, when Bate reported for work, Jordan gave her a memorandum formalizing the termination, which stated as follows:

> This is to inform you that because of your negative attitude and inability to discharge your supervisory duties without alienating or offending the staff, and based on your repeated acts of open defiance and insubordination, as evidenced by your behavior last friday [*sic*] in front of both staff and clients, I have no alternative but to terminate your employment with our program effective immediately.

Jordan did not provide Bate with a written statement of her work-related problems prior to her discharge, as required by § II.B. 2.a.(1)(b) of the Complaint Procedures for cases in which immediate termination was not warranted.

There followed a series of administrative appeals to (1) an Urban Coalition Conference Leader, (2) the City's Office of Administrative Trials and Hearings, (3) a Department of Labor Grant Officer, and (4) the Department's Office of Administrative Law Judges.

## B. *The Conference Leader's Findings*

On March 25, the Urban Coalition conducted an informal conference concerning Bate's discharge. The Coalition's Conference Leader heard testimony from both Bate and Jordan and arguments from their attorneys. In support of her decision to terminate Bate, Jordan submitted a copy of notes from Bate's personnel file, which revealed "ongoing and frequent instances from the beginning of her employ where Ellen Bate acted abusively towards those she was responsible for supervising and towards Ms. Jordan." (Conference Leader Report dated March 1980, at 2.) The notes also revealed that Jordan had had frequent conferences with Bate about her behavioral problems and unsatisfactory work performance, and Jordan testified that Bate had failed to perform specific tasks assigned to her. As to the argument on March 7, Jordan testified that she had been told by another staff member that Bate had held a staff meeting for the purpose of trying to unite the staff with her against Jordan. Jordan stated that when she called Bate into her office to discuss the matter, Bate refused to talk with her. Bate became very emotional, told Jordan that if she was dissatisfied she should fire Bate, and walked out.

Bate, on the other hand, testified that she was unaware that her performance was unsatisfactory and that she believed she got along well with the other staff members and the children enrolled in RIYP. Bate testified that the Friday staff meeting was a regular one at which the discussion concerned program development, not her grievances against Jordan. She stated that she had not walked out of

the meeting in Jordan's office daring Jordan to fire her, but that the meeting had lasted over an hour, during which she had tried to explain what had happened at the staff meeting. Both parties presented corroborating witnesses.

The Conference Leader found, on the basis of the notes in the personnel record and the testimony at the hearing, that Jordan had an adequate substantive basis for terminating Bate. He found that § II.B. 2.a. of the Complaint Procedures had been substantially complied with, in that although Bate did not receive a written statement of her problems, she had received both warnings and an opportunity to improve, which the Conference Leader stated was the purpose of the procedure. The Conference Leader thus concluded that the failure to provide a written statement was not an adequate ground for sustaining Bate's challenge to the termination.

In addition, the Conference Leader found that, based on the evidence he had received, there were adequate grounds to support Jordan's decision to terminate Bate immediately pursuant to § II.B.4. Against the backdrop of Bate's previous actions as recorded in the personnel file, the Conference Leader found that her actions on March 7 showed that she was a sufficiently disruptive force in RIYP to justify Jordan's decision to dismiss her summarily.

Bate appealed the Conference Leader's decision to the City's Office of Administrative Trials and Hearings ("OATH").

## C. The OATH Judge's Decision

After hearing testimony from Bate, Jordan, and several other witnesses, the OATH judge issued an opinion dated July 29, 1980. He disagreed with the Conference Leader's conclusion that RIYP had substantially complied with the Complaint Procedures. He found instead that the "procedures were carelessly or otherwise neglected or misapplied from the outset," a failure the OATH judge considered to be "an egregious breach of procedure of a substantive nature." The judge also concluded that the series of incidents recorded

in Bate's file were too remote in time and context from the March 7 argument to be considered grounds for immediate termination. He stated that in order for those prior incidents to be grounds for disciplinary action, the notice and complaint procedures would have to have been followed; because the procedures were not followed, the judge dismissed those claims of the employer with prejudice.

With respect to the events of March 7, the OATH judge found that the staff meeting held prior to the argument had not been unauthorized or inappropriate. He found, however, that during the ensuing argument, Bate had been insubordinate and had behaved inappropriately toward Jordan. He also found that Bate had been insubordinate on March 5, 1980, when she engaged in a loud and inappropriate argument with Jordan over office keys.

The judge concluded that the incidents of insubordination were not of such a serious or volatile nature as to require that Bate be terminated, much less terminated without prior notice or hearing. He concluded that instead, a ten-day suspension without pay should have been imposed, effective March 10, 1980, the date of her termination. He ordered that Bate be reinstated to her position. He ruled, however, that Bate was not entitled to backpay because (1) there was no evidence that her wrongful termination had been motivated in any way by discriminatory considerations, (2) there was factual evidence justifying some disciplinary action, and (3) Bate would not suffer loss of employment opportunity because she could be made substantially whole by completing her CETA eligibility from the date at which it had been cut off.

In early August 1980, before Bate was reinstated, RIYP cancelled its subcontract with the Urban Coalition, effective August 30, 1980. RIYP's CETA employees were paid CETA wages until September 28, 1980 (*but see* note 6 *infra*), while they participated in a job location program run by the Urban Coalition to help them find non-CETA-subsidized employment.

The Urban Coalition looked for CETA positions for Bate comparable to the one she had held at RIYP, but none were available. At the end of August, the Coalition began to provide Bate with help to find a non-CETA job. Meanwhile, Bate filed a complaint with the Department of Labor, appealing the portion of the OATH judge's decision denying her backpay.

### D. The Grant Officer's Decision

In an opinion dated November 25, 1980, the Department's Grant Officer upheld the OATH judge's decision ordering reinstatement without backpay. Relying on Regional Directive No. 37–80 of the United States Department of Labor, dated May 13, 1980, the Grant Officer noted that an award of backpay was required only in the case of a wrongful termination based on discriminatory grounds; in other cases, the award of backpay was discretionary. The Grant Officer stated that if the termination, although procedurally improper, was substantively justified, backpay was not appropriate unless the procedural defect amounted to a denial of a hearing or substantively prejudiced the complaint. The Grant Officer found that RIYP had acted in good faith in terminating Bate; that "[t]he termination although procedurally improper, was substantively correct"; and that Bate could be reinstated to a similar CETA position.

Bate appealed the Grant Officer's decision to the Department's Office of Administrative Law Judges ("ALJs"). On January 20, 1981, she began to work full-time in a non-CETA job at a salary in excess of that which she had earned working for RIYP.

### E. The ALJ's Decision

Prior to the hearing before the ALJ, the parties agreed that the issues for appeal included (1) whether disciplinary action was appropriate when the Complaint Procedures had not been followed and (2) whether backpay, if awarded, should begin on March 10, 1980, the date on which Bate was terminated, or on March 24, 1980, the date on which Bate was to be reinstated

pursuant to the OATH judge's decision. At the hearing, the parties agreed that testimony would be presented only with respect to whether Bate had mitigated her damages by actively searching for a job after her termination from RIYP; they agreed to rest on the record and their posttrial briefs with respect to the other issues in the appeal.

In an opinion dated March 10, 1983, the ALJ concluded that because the CETA Complaint Procedures had not been followed by RIYP, the OATH judge acted improperly in approving any disciplinary action, including suspension. She ruled that the OATH judge, having found that there was "an egregious breach procedure [sic] of a substantial nature," "was precluded" from considering either the merits of the decision to terminate Bate or the propriety of a less severe disciplinary action. She held that the order of a ten-day suspension was therefore improper.

Relying in part on these rulings, the ALJ concluded that the OATH judge and the Grant Officer had erred in not awarding Bate backpay. She stated that Department Regional Directive 37–80, on which the Grant Officer had relied to support his ruling, was not binding on her. In addition, she observed that although both the OATH judge and the Grant Officer had denied backpay in partial reliance on the facts that Bate would be reinstated and could serve out her CETA eligibility, in fact Bate had not been reinstated and had remained unemployed until she found a job through her own efforts. The ALJ therefore concluded that because CETA programs were being discontinued, and because Bate had eventually found a job that paid more than a CETA job could have, the only means of compensating her for the hardship resulting from her procedural deprivation was to award her backpay. Finding that Bate had done all she could to mitigate her damages by seeking employment, the ALJ awarded her backpay with interest from March 10, 1980, until January 20, 1981, the date on which Bate began

full-time employment at a salary greater than her former CETA wages.

The Urban Coalition moved for reconsideration on the ground, *inter alia*, that the ALJ had concluded incorrectly that the procedural improprieties foreclosed consideration of whether there were substantive grounds for discipline. The ALJ denied the motion.

The Secretary of Labor adopted the ALJ's decision as his own, and the Coalition filed this petition for review.[2]

## II. DISCUSSION

■ In this Court, the Coalition renews its contention that the ALJ erred in awarding backpay to Bate on account of the procedural impropriety in Bate's termination, without considering whether disciplinary action was substantively justified.[3] The Coalition also argues that even if backpay were appropriate, it should not have been awarded for any period later than the date on which all of the RIYP CETA employees ceased receiving CETA wages. We agree. Although the Secretary has discretion to make an award of backpay, this discretion is limited by the requirements of the law governing such awards. We conclude that in the present case, the ALJ did not apply the proper legal standards to either the propriety of a backpay award or the amount of such an award.[4]

### A. *The Coalition's Preservation of the Issue of Justification*

At the outset we confront a contention by Bate and the Secretary that the Coalition has waived its right to pursue the argument that RIYP's termination of Bate was justified. They point out that the Coalition did not take an appeal from the ruling of the OATH judge that the termination was improper, and they contend that

the Coalition did not argue the propriety of the termination before the ALJ. We are unpersuaded that there has been a waiver.

■ While it is true that the Coalition did not appeal the OATH judge's decision to the Department's Grant Officer, the Grant Officer nevertheless considered the merits of the termination. Although the Grant Officer upheld the order of the OATH judge that Bate be reinstated, the Grant Officer also explicitly ruled that "[t]he termination although procedurally improper, was substantively correct." Thus, when the matter reached the stage of review by the ALJ, the Coalition had a favorable ruling on the propriety of the termination. It was entitled, without taking an appeal from the remainder of the decision, to defend that ruling.

■ With respect to the proceedings before the ALJ, we think it clear that the Coalition did not fail to preserve its contention that the termination was justified. As the ALJ observed in her opinion, the parties had agreed to a pretrial order that stated that the propriety of disciplinary action was an issue before her. The fact that no evidence was presented on this issue is of no moment since at the hearing the parties agreed that they would rest on the record and on their post-hearing briefs with respect to all issues other than mitigation.

In short, we find that the Coalition did not waive its right to argue to this Court that the substantive propriety of RIYP's termination of Bate's employment should have been considered by the ALJ.

### B. *The Propriety of an Award of Backpay*

The proper framework for determining whether an award of substantial damages is an appropriate remedy for deprivation of

---

**2.** Although parties to the prior proceedings, the City and RIYP have not joined in the Urban Coalition's appeal.

**3.** Before the ALJ, the Coalition argued that it should not be held liable for a backpay award because it was not Bate's employer. The Coalition has not pursued this position before this Court.

**4.** The Secretary's contention that the ALJ's decision must be upheld because it is supported by substantial evidence is misplaced. The substantial evidence standard has no application where, as here, the ALJ has misapplied the law. *See Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

a claimant's procedural rights is set forth in *Carey v. Piphus*, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978). *Piphus* was an action brought under 42 U.S.C. § 1983 (1976) by students to recover damages for their suspension from school without procedural due process. The issue before the Supreme Court was whether the students were entitled to a substantial award of damages solely on the basis that their procedural rights had been violated and without regard to whether, as a substantive matter, their suspensions were justifiable.

The Court ruled that although some procedural rights are important enough to deserve vindication in a court of law, a finding that such rights have been violated in some way does not necessarily mean that an award of substantial damages is required. 435 U.S. at 260–63, 98 S.Ct. at 1050–52. Of particular pertinence to the present case, the Court noted that "the injury caused by a *justified* deprivation ... is not properly compensable under § 1983." *Id.* at 263, 98 S.Ct. at 1052 (emphasis added). Rather, when there was justification for a deprivation that was accomplished in a procedurally improper way, the claimant must prove actual injury "caused by the denial of procedural due process itself," *id.*, before he will be entitled to more than nominal damages.

■ This framework is equally applicable to cases in which a CETA employee seeks a backpay award because his employer imposed discipline in a procedurally improper way. The purpose of the CETA disciplinary procedures is to "insure and protect substantive rights." *County of Monroe, Florida v. United States Department of Labor*, 690 F.2d 1359, 1362 (11th Cir.1982). If the employee's substantive rights have not been violated, the procedures have no independent value worthy of compensation, absent proof of actual loss flowing only from the procedural deprivation. *Id.* Thus, consideration of an employee's procedural rights may not be totally divorced from consideration of the underlying substantive reasons for the employer's action. *See id.; see also Kentucky Department of Human Resources v. Donovan*, 704 F.2d 288, 294 (6th Cir.1983).

■ These principles have twofold applicability to the present case. First, the ALJ was in error when she ruled that, because of the procedural improprieties, the OATH judge and the Grant Officer were precluded from considering whether there was any justification for RIYP's imposition of discipline on Bate. Under the teaching of *Carey v. Piphus*, it was their obligation to consider whether discipline was justified before reaching the question of damages, and it was likewise the duty of the ALJ to reach the merits of the justification issue. Her decision that backpay should be awarded solely because the termination of Bate's employment was procedurally improper was therefore not in accordance with law. On remand, the Secretary must consider whether RIYP was justified in terminating Bate's employment. If RIYP was justified in imposing that discipline, Bate is not entitled, on the present record, to an award of backpay.[5]

■ Second, *Carey v. Piphus* also teaches that if the claimant has demonstrated injury by reason of the procedural impropriety, he is entitled to compensation for that injury. If, on remand, the Secretary determines that RIYP was not justified in terminating Bate but was justified, as found by the OATH judge and the Grant Officer, in imposing on her a ten-day suspension, Bate will be entitled to an award of backpay dating back to March 24, 1980, the date on which her suspension would have ended. She would not be entitled to backpay for the period during which she would have been suspended, since "the injury caused by a justified deprivation ... is not properly compensable." *Carey v. Piphus, supra*, 435 U.S. at 263, 98 S.Ct. at 1052.

If the Secretary determines on remand that RIYP lacked justification to impose any discipline of termination or suspension on Bate, the Secretary may properly exer-

---

**5.** Even if Bate is not entitled to backpay, if she was entitled to a period of notice prior to the effective date of her termination and if she did not receive her CETA wages during that period, she may be entitled to receive compensation in lieu of notice.

cise his discretion in determining whether or not to give an award of backpay. Such an order could properly award backpay dating back to March 10, 1980, the date on which Bate was dismissed.

## C. *The Proper End Date for a Backpay Award*

 Finally, we turn to the matter of whether the Secretary could properly award backpay to Bate for the entire period between the commencement of unjustified disciplinary action and her commencement of other employment. The purpose of the backpay remedy in a case of wrongful discharge is to make the aggrieved employee whole, *County of Monroe, Florida v. United States Department of Labor, supra,* 690 F.2d at 1362, thereby furthering the purposes of the Act. *Kentucky Department of Human Resources v. Donovan, supra,* 704 F.2d at 296. An award of backpay that gives the employee more than he would have earned but for the improper discharge does not serve the compensatory function because there is "little logical correlation between the award and the loss." *County of Monroe, Florida v. United States Department of Labor, supra,* 690 F.2d at 1362. Such an award is not compensatory but punitive, and thus is improper. *See NLRB v. Fort Vancouver Plywood Co.,* 604 F.2d 596, 602 (9th Cir.1979), *cert. denied,* 445 U.S. 915, 100 S.Ct. 1275, 63 L.Ed.2d 599 (1980).

 In the present case the Secretary awarded Bate backpay through January 20, 1981. The CETA project on which Bate had been employed, however, ended in August 1980, and the ALJ found that RIYP CETA employees ceased to receive CETA wages on September 28, 1980.[6] Thus, the backpay award to Bate grants her wages for several months after the date on which the RIYP CETA employees ceased receiving wages under that program. Since there is no evidence that if Bate had worked for RIYP until the CETA program's end she would have obtained another CETA job immediately, the Secretary's

award gives Bate more than she would have received if she had not been disciplined. The award was thus punitive rather than compensatory and may not be enforced. Although an employer may be required to reinstate employees who were unlawfully dismissed, it has no duty "to recreate for an indeterminate period jobs that would have been 'phased out' of existence" anyway. *Florsheim Shoe Store Co. v. NLRB,* 565 F.2d 1240, 1247 (2d Cir.1977). *Accord Trico Products Corp. v. NLRB,* 489 F.2d 347, 353–54 (2d Cir.1973).

 We conclude that the ALJ abused her discretion in ordering such an extensive award of backpay to Bate. On remand, if the Secretary concludes that an award of backpay is justified, the award must conform to the principles set forth above.

## CONCLUSION

The decision of the Secretary is vacated, and the cause is remanded for further proceedings consistent with this opinion.

---

**6.** The Urban Coalition states in its brief on appeal that it subsequently learned that one such employee received CETA wages until October 31, 1980. (Urban Coalition brief on appeal at 10 n. 6.)