**CITY OF ANN ARBOR, A Michigan Municipal Corporation, Petitioner,**

v.

**UNITED STATES DEPARTMENT OF LABOR, Raymond Donovan, Secretary, Respondent.**

**No. 83–3005.**

United States Court of Appeals, Sixth Circuit.

Argued March 15, 1984.

Decided May 4, 1984.

Melvin Laracey, Ann Arbor, Mich., for petitioner.

E. Kathleen Shahan, U.S. Dept. of Labor, Washington, D.C., for respondent.

Before KEITH and KRUPANSKY, Circuit Judges, and PHILLIPS, Senior Circuit Judge.

KRUPANSKY, Circuit Judge.

This was a petition for review of a final decision of the Secretary of the Department of Labor which instructed petitioner Ann Arbor to compensate a former Ann Arbor C.E.T.A. employee for thirteen months of wages because Ann Arbor failed to conduct an informal hearing prior to termination of the employee.

Ann Arbor is a prime sponsor under the federal job training/employment program established by the Comprehensive Employment and Training Act of 1973 (C.E.T.A.), 29 U.S.C. § 801 et seq.[1] Richard E. Hodg-

---

1. C.E.T.A. was originally enacted in 1973 and has been amended several times. The procedural aspects of this case are controlled by the 1978 amendments while the substantive issues arise primarily under the 1976 version of C.E.T.A., 29 U.S.C. § 801 et seq., and the regulations thereunder promulgated at 29 C.F.R. § 94.1 et seq. The statutes at § 801 et seq. were repealed in 1982

(Pub.L. 97–300, Title I, § 184(a)(1), Oct. 13, 1982, 96 Stat. 1357), and replaced by the Job Training Partnership Act, 29 U.S.C. § 1501 et seq. (J.T.P.A.). Under 1591(d) of the J.T.P.A., the previously adopted regulations covering the C.E.T.A. programs remain in effect; under § 1591(f) of the new act, the provisions of the

es (Hodges) had been employed by the Ann Arbor City Controller's Office from July 18, 1977 until November 25, 1977 when he was terminated for alleged poor performance. The record developed below disclosed that Hodges was employed as an Accounting Clerk I on July 18, 1977. He received six weeks of training, well in excess of the normative one to two weeks, from his predecessor, who was compelled to delay her retirement date to train Hodges.

The Accounting Clerk I position entailed "specialized clerical work involving the application of basic bookkeeping principles and practices". On October 4, 7, 14, and 25, 1977, Hodges was notified of serious errors he had entered into the appropriation ledgers. On November 15, 1977, John P. Bentley (Bentley), the Acting City Controller, informed Hodges that due to "unsatisfactory performance during probation", he would be discharged effective November 25.

On November 21, Hodges disputed Bentley's explanation and charged that he was "under the impression that I was doing a good job, if not an excellent one". Hodges requested, and was granted, a meeting with Bentley and other management officials to discuss the reasons for the termination. The meeting was conducted November 25, 1977, Hodges' last day of work.

Previously, on November 22, 1977, Hodges had filed a state civil rights complaint against the city. The complaint was dismissed on July 26, 1979 subsequent to an investigation which failed to develop any evidence of racial discrimination.

Thereafter, on February 26, 1980, Hodges filed his complaint with the Department of Labor. The Department's civil rights division determined he was discharged for poor performance. Hodges requested a *de novo* administrative evidentiary hearing.

At that hearing, Steven Hendel (Hendel), a Deputy Controller and Hodges' immediate supervisor, testified that Hodges "did not apparently understand the nature of his job", that "his attitude was one of not too much interest in learning", and that he was regularly careless, uninterested, and inaccurate. Hendel noted that Hodges had not shown any signs of improvement.

Bentley also testified and confirmed Hendel's testimony. Bentley opined that Hodges' work was "[i]n general ... careless ... [T]here were errors made and reported back, and ... there was no improvement".

The A.L.J. concluded that Hodges had been discharged in violation of C.E.T.A. regulations because he had not been provided an informal hearing as required by 29 C.F.R. § 98.26(a).[2] The A.L.J. determined that Hodges' original complaint alleged racial discrimination, however, after an adverse disposition of that claim he amended his complaint to include a charge of unjust termination.[3] Accordingly, the A.L.J. held that the prime sponsor was obligated by § 98.26(a) to conduct an informal hearing on the allegation that Hodges was unjustly discharged.

The administrative law judge specifically refused to consider if Hodges would have been discharged for cause even if all procedures and regulations had been followed. Having concluded that the employee was entitled to a presumption of wrongful discharge because of procedural errors, the A.L.J. awarded back pay with interest less Hodges' unemployment compensation benefits, subject to his duty to mitigate damages:

J.T.P.A. do not affect C.E.T.A. actions pending before agencies and courts on October 13, 1982.

**2.** 29 C.F.R. § 98.26 mandates procedures for resolving issues between prime sponsors in the C.E.T.A. program and employees thereunder hired. In relevant portion, § 98.26 provides:
(a) Each prime sponsor ... shall establish a procedure for resolving any issue arising between it ..., and a participant.... Such pro-

cedures *shall* include an opportunity for an informal hearing....

**3.** 29 C.F.R. § 98.21 provides, in subsection (c), for the right of an employee to pursue *inter alia* racial discrimination complaints against an employer under the Act. Section 98.21(d) establishes that the election to challenge a discharge under § 98.21(d) does not cancel the employees rights to the procedural processes of § 98.26(a).

Despite the presumption that Complainant's grievance would have been successful if it had been processed to informal hearing ... [even] [s]ustaining the City's decision will not ... deprive the Complainant of his entitlement to back pay. The failure to provide him an informal hearing before an impartial individual is a sufficient and independent ground upon which to base a remedy on his behalf.

The A.L.J. made it clear that Hodges was to be awarded back pay *solely* because he did not obtain an informal hearing on the unjust termination claim:

Because of my previous finding that the C.E.T.A. procedural requirements as to an informal hearing were violated, I need not determine whether or not the City's adverse termination action was substantively proper .... Back-pay solely for C.E.T.A. procedural violations have been previously upheld ... I do so in this case as well.

The Secretary took no action for thirty days following the A.L.J.'s decision, which therefor became a final agency action. 20 C.F.R. § 676.91(f). Thereafter, there was filed this timely petition for review.

This court's standards of review in this case have been statutorily defined in 29 U.S.C. § 819(b). The Act provides that the Secretary's factual determinations are conclusive if supported by substantial evidence. *Id. Cf. Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951). The relevant factual findings are not voluminous. Resolution of this petition requires evaluation of the legal theory applied by the A.L.J. in arriving at his conclusion, that a procedural defect alone entitled Hodges to back pay as a matter of law, which is a subject amenable to *de novo* review by this court.

Ann Arbor, as a C.E.T.A. recipient, was required to promptly resolve any disputes with C.E.T.A. employees. Specifically, 29 C.F.R. § 98.26(a) mandates, among other procedures, that a C.E.T.A. employee be accorded an informal hearing on any disputed issue. Here, Hodges did obtain a

hearing on his racial discrimination charge but was allegedly deprived of an informal hearing as to his claim of wrongful discharge.

Initially, the Secretary argued that Ann Arbor deprived Hodges of certain procedural rights, such as notices of his substandard performance which jeopardized his continued employment. However, insofar as the final agency decision did not rely on these alleged procedural omissions, they are not subject to appellate review.

Next, the Secretary has urged that the A.L.J. had authority to order back pay awards for procedural violations where they directly resulted "in substantive detriment to a C.E.T.A. employee's public employment rights". The violation in this case, the Secretary contended, was not exclusively a failure to comply with C.E.T.A.-mandated procedures:

Here, ... the termination itself was improper in that it failed to treat Mr. Hodges, a CETA participant, in the same manner, as non CETA employees. The termination of Mr. Hodges as an unsatisfactory employee without the benefit of the evaluation process and the concommitant opportunity to improve job performance accordingly and the opportunity to raise such failure at an impartial hearing was a substantive violation of CETA, causing compensable harm. The Secretary therefore properly awarded back pay.

The Secretary's characterization of the injury, for which relief was granted, as a substantive violation is in conflict with the specific and clear holding of the A.L.J. It is the final agency action which is here for review, not the embellishments and theories created by the Secretary for the benefit of this court. *See Haywood v. Secretary of Health and Human Services*, 699 F.2d 277, 287 (6th Cir.1983). It is the award of back pay *solely* for a procedural violation which is the narrow issue for review. *Id.*

In *Carey v. Piphus*, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978), students were expelled without procedural due process. On appeal, the Supreme Court con-

cluded that, unless it were shown that the students would not have been suspended had due process been accorded them, they would be entitled only to nominal damages for the due process violations. Under *Carey v. Piphus*, damages from a procedural error may not be presumed but must be proved at trial.

Recently, this circuit has indicated, admittedly in *obiter dictum*, that back pay for procedural defaults is not permissible where the discharge itself was proper. In *Kentucky v. Donovan*, 704 F.2d 288 (6th Cir.1983), the court noted:

> [B]ack pay, in many circumstances, will further the purposes of the Act. An award of back pay is the traditional "make whole" remedy for wrongful discharge. Where it has not furthered the purposes of CETA, as when the discharge is proper but the procedure is technically deficient, courts have been reluctant to allow such a remedy. The rationale for disallowing back pay in these cases is that it does not further the purposes of the CETA program.
>
> Yet, in cases not involving technical defects ... no court has found that back pay awards are inconsistent with the purpose of the Act.

704 F.2d at 296 (citations omitted). In *Florida v. Department of Labor*, 690 F.2d 1359 (11th Cir.1982), *Carey v. Piphus* was applied in a case involving a C.E.T.A. discharge. The employee in that case "had not been afforded a prompt hearing on his grievance of wrongful dismissal". 690 F.2d at 1360. In reversing the award the Eleventh Circuit persuasively argued that allowing back wages for a procedural error where a discharge was otherwise appropriate would not make the employee whole, but would be a windfall. Thus the court stated:

> *Carey v. Piphus* is controlling here.... [W]hile [the employee] has been deprived of his procedural rights, he has lost nothing because of it. He would have been terminated even if all procedures and regulations had been followed.

\* \* \* \* \* \*

[A]s noted by the Department of Labor in its brief, the purpose of the remedy of back pay is to make the aggrieved party whole. It is unclear to us how a complainant who was properly discharged in a procedurally imperfect way is made whole by the payment of a year's wages for which he did not work. There is little logical correlation between the award and the loss. The payment of back pay here would be a windfall, not a make-whole compensation. In fact the Department of Labor's own regulations contain the following guidelines:

> If the termination was improper on procedural grounds but substantively proper [ ... ], back pay would not normally be appropriate [ ... ].

U.S. Department of Labor, Employment and Training Administration, Field Memorandum No. 188–80 (March 14, 1980). *See also Massachusetts v. Department of Labor*, 683 F.2d 568 (1st Cir.1982); *Boston v. Secretary of Labor*, 631 F.2d 156 (1st Cir.1980). Under the principle announced in *Carey v. Piphus*, and explicated by the foregoing cases, Hodges was not entitled to back pay merely because his discharge was procedurally defective. Because the A.L.J. explicitly held the contrary, the award of back pay must be, and hereby is denied.

Consistent with the foregoing, the petition is granted and the Secretary's decision is set aside.