COMMONWEALTH OF MASSACHU-
SETTS, BALANCE OF STATE,
PRIME SPONSOR, Petitioner,

v.

UNITED STATES DEPARTMENT OF
LABOR, et al., Respondents.

No. 81–1636.

United States Court of Appeals,
First Circuit.

Argued March 5, 1982.

Decided May 25, 1982.

Judith S. Yogman, Asst. Atty. Gen., Boston, Mass., with whom Francis X. Bellotti, Atty. Gen., Boston, Mass., was on brief, for petitioner.

Bette J. Briggs, Atty., U. S. Dept. of Labor, Washington, D. C., with whom T. Timothy Ryan, Jr., Sol. of Labor, William H. DuRoss, III, Associate Sol. for Employ-

ment and Training, and Jonathan H. Waxman, Counsel for Litigation, Washington, D. C., were on brief, for respondent, U. S. Dept. of Labor.

T. Richard McIntosh, Hyannis, Mass., for respondent Brian Eckels.

Before CAMPBELL, BOWNES, and BREYER, Circuit Judges.

BOWNES, Circuit Judge.

The Commonwealth of Massachusetts in its capacity as Balance of State, Prime Sponsor under a federal grant received pursuant to the Comprehensive Employment and Training Act (CETA—the Act), 29 U.S.C. § 801 et seq.,[1] petitions for a review of a decision of the Department of Labor requiring the Commonwealth to make payment of back wages to a discharged CETA participant, Brian Eckels. Eckels had been employed by the Town of Yarmouth in a Title VI CETA program, 29 U.S.C. §§ 961–966 (1976); 29 U.S.C. §§ 961–970 (Supp. III 1979). Yarmouth, as "subgrantee," received CETA funds through the Commonwealth. The Commonwealth raises two issues, whether a back pay award is appropriate and whether, if the award is appropriate, it can properly be charged to the Commonwealth rather than to Yarmouth, Eckels's immediate CETA employer. The Department of Labor and Eckels are respondents; Yarmouth has not appeared in this appeal although it participated in earlier proceedings. We have jurisdiction under 29 U.S.C. § 817(a) (Supp. III 1979).

The validity of the back pay award depends on two questions: whether there was substantial evidence to support the ALJ's findings, 29 U.S.C. § 817(b) (Supp. III 1979),[2] and whether he applied appropriate back pay standards.

Our review of the evidence convinces us that there was substantial evidence for the ALJ's conclusion that Eckels's firing was wrongful. Eckels was fired at the urging of David Chase, a CETA aide, the day after an incident at the worksite. Eckels and his co-workers were burning brush in a town cemetery, using gasoline and other inflammable fuels. At one point, Eckels poured some gasoline on a fire, and flame traveled up the stream of gasoline and reached the sleeve of a co-worker, Walter Barboza, on whom Eckels had spilled some of the gasoline. The flame was quickly extinguished with snow, and Barboza was uninjured. The incident was discussed the next morning at the weekly meeting of the Yarmouth CETA supervisors. They decided to issue Eckels a formal warning. Chase then went to the worksite to discuss the matter with Eckels. According to Eckels, when Chase arrived, he immediately informed Eckels that he was fired. Chase testified that he began by discussing the matter privately with Eckels, that Eckels became abusive, and that in order to control the situation—other CETA workers were in the vicinity—he told Eckels that he would recommend his immediate termination. Chase did not have the power to fire Eckels, but his recommendation was accepted. Yarmouth had a procedure for firing CETA

---

1. Two versions of CETA are involved here. CETA was first enacted in 1973, Pub.L.No.93–203, 87 Stat. 839 (1973), and it was amended in 1974 to include as Title VI an emergency jobs program, Pub.L.No.93–567, 88 Stat. 1845 (1974). It was pursuant to Title VI that Eckels was hired. The Act was amended in significant respects in 1978, Pub.L.No.95–524, 92 Stat. 1909 (1978). In particular, the Secretary of Labor was given far greater powers over prime sponsors and other CETA recipients to regulate the implementation of CETA programs. Compare 29 U.S.C. § 816 (Supp. III 1979) with 29 U.S.C. § 818 (1976). Judicial review of the Secretary's decisions is accordingly broader as

well. Compare 29 U.S.C. § 817 (Supp. III 1979) with 29 U.S.C. § 819 (1976).

2. 29 U.S.C. § 817(b) (Supp. III 1979) provides as follows:
   The findings of fact by the Secretary, if supported by substantial evidence, shall be conclusive, but the court, for good cause shown, may, in whole or in part, set aside the findings of the Secretary or remand the case to the Secretary in whole or in part to take further evidence, and the Secretary may thereupon make new or modified findings of fact and may modify the previous action, and shall certify to the court the record of the further proceedings.

participants,[3] but uncontroverted evidence shows that it was not followed in this case.

■ In awarding back wages, the ALJ applied the standards for awards to wrongfully discharged CETA participants that were contained in a so-called "regional letter" issued by the Department of Labor in 1976.[4] Region I Letter Series No. 414–76 (Dec. 28, 1976). The Commonwealth contends that the ALJ should have used the standards contained in a 1980 regional letter, Region I Letter Series No. 126–80. The difference between the letters is that the 1980 letter distinguishes between substantively and procedurally wrongful discharges, only the former warranting a back pay award, whereas the 1976 letter does not so distinguish. The Commonwealth argues that Eckels's termination without the required warnings was only procedurally wrongful.

We need not attempt to characterize Eckels's discharge as substantively or procedurally wrongful because the Commonwealth was derelict in bringing the 1980 letter to the ALJ's attention. At the hearing before the ALJ, counsel for the Commonwealth and for Yarmouth sought to present the 1980 letter as evidence of the appropriate back pay standards. The ALJ declined to accept the letter at the hearing and instead asked counsel to attach a copy of the letter to their post-hearing briefs. Unfortunately, counsel neglected to do so. The ALJ announced his decision on June 23, 1981, and, under 20 C.F.R. § 676.91(f), the Secretary of Labor adopts the decision as his own after thirty days, that is, on July 23, 1981. On July 21, 1981, counsel submitted a copy of the 1980 regional letter to the Secretary. The Secretary apparently disregarded the letter because he filed no order staying the ALJ's decision, the only method for preventing the order from becoming his own. We believe that it was within the Secretary's discretion not to countenance such eleventh hour tactics. The wiser course originally might have been for the ALJ to have taken the letter at the hearing, but counsel were told how to submit the letter, and they failed to follow up. We conclude that the ALJ employed appropriate back pay award standards and that he applied them correctly.[5]

■ The second issue is whether back pay was properly awarded against the Commonwealth. Under the Act, the Secretary may order sanctions or other appropriate corrective actions against a "recipient [who] has not taken appropriate action against its subcontractors, subgrantees, and other re-

---

3. The Yarmouth CETA termination procedure was as follows:
    1. The participant is notified of the charges lodged against him/her.
    2. The participant has the right to agree or disagree with the charges. He also has the right to speak with the Affirmative Action Officer.
    3. The participant is given a verbal warning by the counselor on the recommendation of the participant's immediate supervisor.
    4. This must be followed with a formal warning sent by certified mail to the participant, or hand carried by the counselor.
    5. The same procedure is repeated again before the participant is terminated.
    6. Upon termination, the participant has the right to a challenge in the form of a grievance.
    7. It is the function of the counselor, when the procedure is followed to terminate the participant.
    8. With the exception of an emergency termination that doesn't require prior verbal or written warning. Examples include: drunkenness, fighting, stealing, reckless use of equipment, and extreme insubordination all depending upon the surrounding circumstances. An emergency is one where the participant's actions threaten the safety of other persons or himself, or where a participant's actions threaten continued disruption of the worksite if discipline is not imposed immediately.

4. Further discussion about the nature generally of a "regional letter" appears in Nason v. Kennebec County CETA, 646 F.2d 10 (1st Cir. 1981).

5. The Commonwealth makes three other attacks on the back pay award—its inconsistency with the purpose of CETA, the inadequacy of the ALJ's stated reasons, and the inconsistencies of his findings—which we reject summarily. Only the last has colorable merit, but it depends essentially on the Commonwealth's position that the ALJ applied the wrong back pay standard, a position we conclude is incorrect.

cipients." 29 U.S.C. § 816(d)(1) (Supp. III 1979).[6] "The Secretary may take direct action against a subgrantee or subcontractor. This, however, does not relieve a recipient who receives financial assistance directly from the Secretary from being responsible for the actions and omissions of its subgrantees and subcontractors." S.Rep.No.891, 95th Cong., 2d Sess. 43, *reprinted in* 1978 U.S.Code Cong. & Ad.News 4480, 4523; *see also* S.Rep.No.891, at 81, *reprinted in* 1978 U.S.Code Cong. & Ad.News 4561.

Without determining how far the Secretary's authority to take appropriate corrective actions allows it to impose sanctions on prime sponsors when it is a subgrantee who initially fails to comply with CETA, we believe that the facts in this case justify the award against the Commonwealth. The ALJ's decision requires the Commonwealth to pay Eckels, but the Commonwealth may also seek reimbursement from Yarmouth. Documents recently filed with this court raise the question whether Yarmouth is still involved in CETA programs, which may affect its liability. Further development of the facts and law at this point would be wasteful. Eckels is entitled to his back pay award, and this case has dragged on long enough over such a relatively small sum. The Commonwealth appears to be in a position to make payment, and it can no doubt work out the ultimate payment with Yarmouth. Eckels should not have to wait for the Commonwealth-Yarmouth relationship to be resolved.

*The petition is denied.*

6. 29 U.S.C. § 816(d)(1) (Supp. III 1979) provides in full as follows:

If the Secretary concludes that any recipient of funds under this chapter is failing to comply with any provision of this chapter or the regulations under this chapter or that the recipient has not taken appropriate action against its subcontractors, subgrantees, and other recipients, the Secretary shall have authority to terminate or suspend financial assistance in whole or in part and order such sanctions or corrective actions as are appropriate, including the repayment of misspent funds from sources other than funds under this chapter and the withholding of future funding, if prior notice and an opportunity for a hearing have been given to the recipient. Whenever the Secretary orders termination or suspension of financial assistance to a subgrantee or subcontractor (including operators under a nonfinancial agreement), the Secretary shall have authority to take whatever action is necessary to enforce such order, including action directly against the subgrantee or subcontractor, and an order to the primary recipient that it take such legal action, to reclaim misspent funds or to otherwise protect the integrity of the funds or ensure the proper operation of the program.